UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

BENNY FITZWATER and CLARENCE
BRIGHT, and TERRY PRATER, and
EMMET CASEY, JR., and CONNIE Z.
GILBERT, and ALLAN H. JACK, SR.,
and ROBERT H. LONG, on behalf of
themselves and others similarly
situated,

        Plaintiffs,


v.                                      Civil Action No. 2:16-cv-09849


CONSOL ENERGY, INC., and         Consolidated with:
CONSOLIDATION COAL CO., and      Civil Action No. 1:17-cv-03861
FOLA COAL CO., LLC, and
CONSOL OF KENTUCKY, INC., and
CONSOL BUCHANAN MINING CO., LLC,
and CONSOL PENNSYLVANIA COAL CO.,
LLC, and KURT SALVATORI,

        Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>


        Pending is the plaintiffs' supplemental motion for
class certification, filed August 17, 2018.


I. Background


        On April 24, 2017, plaintiffs Benny Fitzwater
("Fitzwater"), Clarence Bright ("Bright"), and Terry Prater
("Prater"), on behalf of themselves and others similarly

situated, filed their amended complaint against CONSOL Energy, Inc., Consolidation Coal Co., Fola Coal Co., LLC, CONSOL of Kentucky, Inc., and Kurt Salvatori (CONSOL Energy, Inc.'s Vice President of Human Resources from 2011-2016 and fiduciary of the plaintiffs' employee welfare benefit plans) in this court. First Am. Compl., ECF No. 36 ("ECF No. 36"). This case was consolidated on December 22, 2017 with Casey v. CONSOL Energy, Inc. et al., brought by Emmett Casey, Jr. ("Casey"), Connie Z. Gilbert ("Gilbert"), Allan Jack Sr. ("Jack"), and Robert H. Long ("Long"). ECF No. 90.

Plaintiffs Casey, Gilbert, Jack, and Long filed an amended complaint on March 1, 2018.[1] Second Am. Compl., ECF No. 103 ("ECF No. 103"). After Fitzwater, Bright, and Prater's original motion to certify class, filed July 13, 2017, was denied as moot by the court's February 6, 2018 order, see ECF No. 100, all seven named plaintiffs jointly filed a supplemental motion for class certification against CONSOL Energy, Inc., Consolidation Coal Co.,[2] Fola Coal Co., LLC, CONSOL of Kentucky, Inc., CONSOL Pennsylvania Coal Co., LLC (collectively,

---

[1] The March 1, 2018 amended complaint listed the same defendants, except it replaced Fola Coal Co., LLC and CONSOL of Kentucky, Inc. with CONSOL Pennsylvania Coal Co., LLC.
[2] In 2014 and 2015, "Consolidation Coal did business as Consol Buchanan Mining Company, LLC in reference to the Buchanan Mine." ECF No. 103 ¶ 18.

"CONSOL"),[3] and Mr. Salvatori on August 17, 2018.  Pls.' Suppl. Mot. Class Cert., ECF No. 155 ("ECF No. 155").[4]

The named plaintiffs are retired miners who worked at CONSOL mine sites consisting of the CONSOL of Kentucky mines, the Buchanan Mine located in Virginia and the Enlow Fork Mine located in Pennsylvania, or at the Fola mine sites located in West Virginia.  Pls.' Mem. Supp. Suppl. Mot. Class Cert. 4-5, ECF No. 156 ("ECF No. 156"); ECF No. 103 ¶¶ 23, 58; ECF No. 36 ¶¶ 30-31.  They seek to represent some 4,000 miners who worked at numerous CONSOL mine sites in four different states over the course of approximately forty years.  ECF No. 156 at 1; Pls.' Reply Suppl. Mot. Class Cert. 1, ECF No. 162 ("ECF No. 162"). The plaintiffs allege wrongful and discriminatory termination of retiree health benefits pursuant to the Employee Retirement Income Security Act of 1975 ("ERISA"), 29 U.S.C. § 1001, et seq. ECF Nos. 36, 103.

In the early 1980s, CONSOL began holding orientation sessions for new, non-union employees at each of its mine sites,

---

[3] Consolidation Coal Co., CONSOL of Kentucky, Inc., CONSOL Pennsylvania Coal Co., LLC, and Fola Coal Co., LLC are all wholly owned subsidiaries of CONSOL Energy, Inc.  ECF No. 103 ¶ 21; ECF No. 36 ¶ 93.

[4] The plaintiffs' supplemental motion incorporated the grounds set forth "in the original Motion to Certify Class, Memorandum in Support, and Reply (ECF 63, 64, 71)."  ECF No. 155 at 3.

during which CONSOL representatives allegedly made oral and written promises of lifetime medical benefit coverage to miners and their beneficiaries as part of their "major initiative to begin opening non-union coal mines." ECF No. 156 at 4. Therein, representations were allegedly "made in written form on slide shows – which Defendants projected on the wall for the putative class members to read – or in hand-outs distributed to class members by Consol." Id. at 4-5. The materials allegedly "explained the CONSOL retiree benefits and stated that those benefits would remain competitive with the lifetime, Congressionally-backed benefits available to miners through the UMWA," referring to the United Mine Workers of America. Id. at 5. The plaintiffs believed these lifetime retiree benefits included medical, prescription drug, dental, vision, and life insurance coverage. ECF No. 103 ¶ 63.

The plaintiffs refer to these benefits as the "Lifetime Plan" for which there was no uniform formal statement and no Summary Plan Document ("SPD"). Formal plans with SPDs did exist, consisting of varying degrees of coverage for medical, prescription drug, short- and long-term disability, dental, vision, and life insurance benefits, in addition to pension payments under a separate retirement plan. See, e.g., August 31, 2018 Declaration of Deborah Lackovic (Consol's

Director – Benefits) ("Second Lackovic Decl."), Exs. A-P, ECF Nos. 160-19 to 160-24. The defendants provided the court with SPDs from 1992, 1998, 2003, 2005, 2006, 2011, 2014 that were distributed to CONSOL's retired and active employees. Id.

For instance, the 1992 SPDs benefits binder given to production and maintenance employees at "Enlow Fork Mining Company," "Consol of Pennsylvania Coal Company," and "Consolidation Coal Company of Kentucky" summarized the (a) life insurance, (b) medical, (c) salary continuance/disability, (d) dental, and (e) retirement benefit plans, and provided a separate SPD for each of them. Second Lackovic Decl., Ex. K, ECF No. 160-23. The SPDs the defendants provided up until the mid-2000s covered both active and retired employees within the same plans. See, e.g., Id. Ex. J, ECF No. 160-22 at 28, CONSOL022576;[5] Id. Ex. M, ECF No. 160-24 at 12, CONSOL022088.[6]

In 2006, CONSOL began providing two separate sets of SPDs, one for retirees and one for active employees. Second

---

[5] The "CONSOL Inc. Comprehensive Medical Expense Benefits Plan for Salaried Employees" issued in 2003 was described as "a group health plan which provides payment for certain medical care to eligible employees, retirees, and dependents."
[6] The "Comprehensive Medical Expense Benefits Plan for Production and Maintenance Employees of Buchanan Mine" issued in 2005 was described as "a group medical plan which provides payment for certain health and vision care to eligible employees, retirees, and dependents."

Lackovic Decl. ¶¶ 7-8, ECF No. 160-19.  Retirees and active employees also both received a separate SPD for each type of benefit they received: medical, prescription drug, dental, vision, disability, and life insurance, though the SPDs for retired and active employees were all contained in a common welfare plan designated Plan Number 581.  Id. Exs. B-F, (SPDs for retirees), Exs. G-H (SPDs for active employees), ECF Nos. 160-19 to 160-20; ECF No. 103 ¶ 89.

In January 2011, CONSOL issued a separate benefit plan for retired employees called the CONSOL Energy Inc. Retiree Health and Welfare Plan ("Retiree Benefits Plan").  See Second Lackovic Decl., Ex. A, ECF No. 160-19.  Active employees remained participants in what was known as the CONSOL Energy Inc. Health and Welfare Plan ("Active Employee Benefits Plan."), which the parties at times refer to as the CONSOL Energy, Inc. Flexible Benefits Program Comprehensive Medical Expense Benefits Plan.  See July 27, 2017 Declaration of Deborah Lackovic ("First Lackovic Decl.") ¶ 9, ECF No. 67-5; Second Lackovic Decl. ¶ 8, ECF No. 160-19; ECF No. 36 ¶ 50.  Unlike earlier plans that covered dental and disability, the Retiree Benefits Plan only covered medical, prescription drug, vision, and life insurance benefits.  See First Lackovic Decl. ¶ 8, ECF No. 67-5; Second Lackovic Decl., Ex. A, ECF No. 160-19.  The Active Employee

Benefits Plan continued to carry medical, prescription drug, vision, dental, disability, and life insurance benefits. Second Lackovic Decl. ¶ 8, ECF No. 160-19; Id. Ex. G, ECF No. 160-20.

In or around 2010, the defendants allegedly "became aware of a union organizing drive," and in order to "halt" organizational efforts, the defendants "repeatedly represented to their employees," including Bright, Fitzwater, and Fola miner Harold Scott, that the "lifetime benefits plan . . . was altogether more valuable than benefits offered by the UMWA." ECF No. 36 ¶¶ 36-37. During the union organizing drive, the defendants allegedly "repeated their previous statements regarding the Lifetime Plan, specifically providing written statements to the plaintiffs that: 'This is a better deal than the UMWA negotiated in the national contract. AND REMEMBER, IT DIDN'T COST YOU A PENNY IN DUES OR ASSESSMENTS.'" Id. ¶ 38.

Despite these assurances, the plaintiffs soon learned that they were not in fact assured lifetime benefits under a single, unified plan. Indeed, dating back to 1992, the SPDs for the various benefit plans each contained a reservation of rights clause that stated that CONSOL reserves the right to amend or terminate the plans at any time for active employees and current or future retirees. See, e.g., Second Lackovic Decl. ¶¶ 9-10,

ECF No. 160-19.[7]  In accordance with the reservation of rights clauses, CONSOL announced in late 2014 that it was terminating retiree health and welfare benefits for all active employees on October 1, 2014.  ECF No. 155-14.  Retirement-eligible employees could continue to receive health and welfare benefits under the Retiree Benefits Plan if they retired as of September 30, 2014, although the Retiree Benefits Plan would terminate on January 1, 2020.  Id.  Alternatively, active employees could continue working and receive a one-time, lump sum transition payment (to be paid on or around October 22, 2014), based on their years of service, to support their healthcare coverage upon retirement. Id.[8]  Employees who had retired prior to this Fall 2014 announcement never had the option of receiving a transition payment.  Id.

---

[7] For instance, a 1992 SPD states, "The Company reserves the right to terminate, suspend, withdraw, amend or modify the Plan at any time.  Any such change or termination in benefits (a) will be based solely on the decision of the Company and (b) may apply to active Employees, future retirees and current retirees or other covered persons as either separate groups or as one group."  Second Lackovic Decl., Ex. K, ECF No. 160-23 at 67, CONSOL019250.

[8] The transition payments escalated in five-year increments according to employees' years of "credited service."  For example, production employees received $2,500 for 0-4.99 years of credited service, $10,000 for 10-14.99 years of credited service, and $100,000 for 30 years of credited service.  "Staff Employees (Over age 50 as of 12/31/2013)" with those same years of credited service received $2,500, $5,000, and $10,000, respectively.  ECF No. 155-14 at 2, CONSOL003849.

A year later, CONSOL informed retired employees by letter that their retiree benefits under the Retiree Benefits Plan would terminate on December 31, 2015. ECF No. 155-16. For retirees, such as named plaintiff Prater, who had previously elected to retire after the Fall 2014 announcement, CONSOL provided a pro-rated portion of the previously rejected transition payment to reflect the receipt of an additional year of benefits under the Retiree Benefits Plan. First Lackovic Decl. ¶ 15, ECF No. 67-5; Prater Dep. 125:2-127:5, ECF No. 67-7; Samons Dep. 65:2-6, ECF No. 67-9.

The plaintiffs now contend that the defendants violated ERISA by representing, orally and in writing, the existence of a single, unified retiree welfare benefits plan, which they coin the "Lifetime Plan," consisting of lifetime medical, prescription drug, dental, vision, and life insurance coverage. ECF No. 156 at 1-3. They claim that the oral representations along with the orientation and training materials created a Lifetime Plan enforceable under ERISA conditioned on the plaintiffs retiring at age fifty-five and attaining ten years of credited service. ECF No. 103 ¶ 2; ECF No. 36 ¶ 21.

There is no SPD for a "Lifetime" Plan. The plaintiffs assert that "Consol created the Lifetime Plan through its

slideshows and explanations that retiree welfare benefits would vest" in retirement after working the requisite number of years. ECF No. 162 at 13.  The plaintiffs also allege that the defendants withheld or inconsistently distributed the separate SPDs for retirees, which also failed to mention obligations under the Lifetime Plan.  The plaintiffs say that some employees never received the SPD for the Retiree Benefits Plan and others only received the SPD when they became eligible for retirement, which was the first time they learned that there were any differences in the welfare benefits of retirees versus active employees.  ECF No. 103 ¶¶ 76-83, 138; ECF No. 36 ¶¶ 65-75; ECF No. 156 at 10, 22.

## II. Class Action Allegations

The consolidated plaintiffs move for class certification on all seven counts listed in the March 1, 2018 amended complaint:[9] (I) Breach of fiduciary duties as to the Lifetime Plan under 29 U.S.C. § 1104(a)(1)(a)(i); (II) Enforcement of the Lifetime Plan as an ERISA plan under

---

[9] The plaintiffs' do not seek certification of the coercive inference claim, 29 U.S.C. § 1141, that was included in plaintiffs Fitzwater, Bright and Prater's first amended complaint, filed April 24, 2017.  ECF No. 156 at 19; Pls. Mem. Supp. Mot. Cert. Class 13, ECF No. 64; ECF No. 103 ¶¶ 109-156.

29 U.S.C. § 1132(a)(1-3); (III) Discrimination against individual participants based on health-status related factors under 29 U.S.C. § 1182; (IV) Failure to meet the duty of disclosure by providing the plaintiffs with incomplete SPDs that did not mention the Lifetime Plan's benefits and obligations or with no SPDs at all under 29 U.S.C. § 1021(a)(1); (V) Failure to provide accurate and comprehensive SPDs regarding the Lifetime Plan under 29 U.S.C. § 1022(a); (VI) Failure to accurately state the Lifetime Plan's requirements with respect to eligibility under 29 U.S.C. § 1022(b); and (VII) Failure to provide an adequate SPD regarding the Lifetime Plan in a timely manner under 29 U.S.C. § 1024(b)(1). ECF No. 156 at 18-19.

The plaintiffs originally proposed the following class definition which would establish a class for retirees only:

> All individuals who in 2014 or 2015 were participants in or beneficiaries of a welfare benefits plan (medical, prescription drug, dental, vision, and/or life insurance) administered by CONSOL Energy ("Consol"), whose receipt of such benefits was predicated on being a retiree from Consol or the dependent of a retiree from Consol, and whose receipt of such benefits terminated in the years of 2014 and 2015.

ECF No. 156 at 3. In their response to the plaintiffs' supplemental motion for class certification, the defendants argued that the class definition was too indefinite because it ranged anywhere from 12,000 to 16,000 individuals based on the

allegations in the complaint.  Defs.' Resp. Suppl. Mot. Class
Cert. 1-2, ECF No. 160 at 1-2 ("ECF No. 160").  The definition
was also overbroad in that it "would include individuals who
were not impacted by CONSOL's 2014 and 2015 decisions to
terminate retiree medical benefits" because their retiree
medical liabilities had already been transferred to a separate
entity, Murray Energy Corporation.  Id. at 8-9.  Thus, the
actual size of the putative class was only around 4,000
individuals.  ECF No. 162 at 3.

For the first time in their reply, the plaintiffs now
seek to certify the following two classes of CONSOL employees
from mine sites located in West Virginia, Kentucky, Virginia,
Pennsylvania, and "neighboring states:"

> Class A: All individual plan participants, and their
> dependents, who had qualified to enroll in a retiree
> welfare benefits plan administered by CONSOL Energy
> ("CONSOL"), but who had not yet enrolled in such plan
> when CONSOL terminated their plan participation in the
> years of 2014 and 2015.

> Class B: All individual plan participants, and their
> dependents, who had enrolled in a retiree welfare
> benefits plan administered by CONSOL prior to CONSOL
> terminating their plan participation in the years of
> 2014 and 2015.

ECF No. 162 at 3-4; ECF No. 156 at 12.  Class A covers the six
"Lifetime Plan" Counts of I-II and IV-VII, and Class B applies
only to remaining Count III (Discrimination based on Health
Status-Related Factors).  ECF No. 162 at 4.

The Declaration of CONSOL's Director - Benefits Deborah Lackovic ("Lackovic") that is included in the defendants' response notified the plaintiffs that "[n]otwithstanding any differences in coverage between the groups," Plan Number 583 encompassed <u>all</u> CONSOL retirees, including UMWA retirees. Second Lackovic Decl. ¶¶ 4-5, 12, ECF No. 160-19. The plaintiffs contend in their reply that they proposed this two-part class definition "to account for excluding the UMWA members" that Lackovic explained were still covered under the Retiree Benefits Plan, designated Plan Number 583. ECF No. 162 at 3. The defendants insist in their surreply that the plaintiffs lack a proper justification for belatedly expanding this class definition to include retirement-eligible individuals in addition to retirees. Defs.' Surreply, ECF No. 173 at 8-12 ("ECF No. 173"). They point out that nothing in their argument regarding Murray Energy Corporation raised any issues related to retirement-eligible individuals the plaintiffs now seek to include in Class A. <u>Id.</u> at 10.

"The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." <u>See</u> <u>Clawson v. FedEx Ground Package Sys., Inc.</u>, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing <u>United States v. Williams</u>, 445 F.3d 724, 736 n.6 (4th

Cir. 2006)).  However, district courts have discretion to
consider these issues, such as when the opposing party files a
surreply.  Id. at 734-35 (citing Curry v. City of Syracuse, 316
F.3d 324, 330 (2d Cir. 2003)).  Inasmuch as the court held an
additional hearing addressing the revised class definition and
granted the defendants leave to file a surreply, the plaintiffs'
newly proposed class definition will be evaluated.


### III. Applicable Law


The parties vigorously dispute the proof relied upon
by the plaintiffs in attempting to meet their certification
burden under Rule 23 of the Federal Rules of Civil Procedure.
The court thus undertakes the "rigorous" analysis required under
United States Supreme Court precedent, see Wal-Mart Stores, Inc.
v. Dukes, 564 U.S. 338, 350-51 (2011), nevertheless mindful of
our court of appeals' admonition that Rule 23 should be accorded
a liberal construction "which will in the particular case 'best
serve the ends of justice for the affected parties and . . .
promote judicial efficiency.'"  Gunnells v. Healthplan Services,
Inc., 348 F.3d 417, 424 (4th Cir. 2003) (quoting In re A.H.
Robins, 880 F.2d 709, 740 (4th Cir. 1989)).

A party seeking class certification must satisfy the
requirements found in Rule 23(a) of the Federal Rules of Civil

Procedure and demonstrate satisfaction of at least one of the subdivisions of Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). The material provisions of Rule 23(a) provide as follows:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> >
> > (2) there are questions of law or fact common to the class;
> >
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> >
> > (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see generally Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311 (4th Cir. 2006).

First, the numerosity requirement does not mandate a specific number of plaintiffs to maintain a class action. Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir. 1984). Rather, the "[p]racticability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." Baltimore v. Laborers' Int'l Union of

N. Am., 67 F.3d 293 (4th Cir. 1995) (quoting Kilgo v. Bowman

Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986)).

The commonality and typicality requirements "both

serve as guideposts for determining whether under the particular

circumstances maintenance of a class action is economical and

whether the named plaintiff's claim and the class claims are so

interrelated that the interests of the class members will be

fairly and adequately protected in their absence." Soutter v.

Equifax Info. Servs., LLC, 498 F. App'x 260, 264 (4th Cir. 2012)

(internal quotation marks omitted). These requirements "tend[]

to merge" with the adequacy of representation requirement, see

Amchem Prods., Inc., 521 U.S. at 626 n. 20, which precludes

class certification unless the class representative "possess[es]

the same interest and suffer[s] the same injury as the class

members." Broussard v. Meineke Disc. Muffler Shops, Inc., 155

F.3d 331, 337-38 (4th Cir. 1998) (citations and internal

quotation marks omitted).

As noted by our court of appeals, "[a] plaintiff bears

the burden of proving the[] requirements" of Rule 23(a). Monroe

v. City of Charlottesville, 579 F.3d 380, 384 (4th Cir. 2009).

"A party seeking class certification must do more than plead

compliance" with Rule 23 Requirements. EQT Prod. Co. v. Adair,

764 F.3d 347, 357 (4th Cir. 2014) (citing Wal-Mart, 564 U.S. at

350).  Instead, the "party must present evidence that the putative class complies" with Rule 23(a), as "actual, not presumed, conformance" must be shown.  Id.; Gen. Tel. Co. of SW v. Falcon, 457 U.S. 147, 160 (1982).

Finally, Rule 23(b) states:

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy . . . .

Fed. R. Civ. P. 23(b).

## IV. Analysis

Respecting numerosity, plaintiffs contend that at least 4,000 putative class members were affected by the defendants' "uniform action to terminate retirement welfare benefits for the putative class of non-union Consol retirees," ECF No. 162 at 1, thereby readily satisfying the first requirement of Rule 23(a).

Respecting commonality, the plaintiffs identify the following putative questions of law and fact:

> (1) Whether the class members are or have been participants or beneficiaries in the applicable plan or plans;
>
> (2) Whether the defendants acted as fiduciaries of the applicable plan or plans, directly or indirectly, to convey misrepresentations to the plaintiff class within the meaning of ERISA[;]
>
> (3) Whether defendants have breached the duties, responsibilities, and obligations imposed upon them by ERISA, including in this case the duty not to discriminate pursuant to 29 U.S.C. 1182 (Count III of the Amended Complaint)[; and]
>
> (4) Whether, pursuant to ERISA, defendants are liable for the actions of non-fiduciaries who participated in defendants' breaches of fiduciary duties.

ECF No. 156 at 13-14.

Regarding typicality, the plaintiffs assert that all members suffered an improper termination of their "lifetime" healthcare benefits and, with respect to Class B, were

discriminated against by the defendants.  Id. at 17.  The
plaintiffs also claim to fairly protect the interests of the
putative class and that they are represented by counsel who are
experienced with class action litigation, thus satisfying the
fourth and final requirement of Rule 23(a).

The plaintiffs seek certification under Rule 23(b)(1),
(b)(2), and (b)(3).  In short, plaintiffs assert that litigating
their claims separately would present a risk of inconsistent
standards of conduct (23(b)(1)), that defendants' actions
affected the putative class in a "generally-applicable fashion"
(23(b)(2)), and that common questions of law and fact
predominate over any questions affecting individual class
members (23(b)(3)).  ECF No. 156 at 18-24.

The plaintiffs contend that the putative class members
"share identical facts of law" inasmuch as they were "subject to
the same course of conduct" by CONSOL – "universal written
representations that miners benefits would vest if they met the
service requirements," and further, "accepted the offer of
lifetime benefits and fully performed pursuant to that
agreement," "suffered the same loss of the retirement welfare
benefits," and "seek the same relief."  ECF No. 156 at 11.  And
so, they claim that Counts I through VII are suitable for class
treatment.

The defendants principally argue that Counts I-II and IV-VII rest on mischaracterized facts and individualized factual inquiries that fail to meet Rule 23(a)'s commonality and typicality requirements.  ECF No. 160.  They argue that the plaintiffs fail to show that they detrimentally relied on CONSOL's allegedly uniform promises of lifetime benefits.  ECF No. 160 at 9-17.  As to Count III, the defendants argue that the plaintiffs lack evidence to show discriminatory motive to support their health status discrimination claim.  Id. at 18.

Under the typicality analysis, the court begins by reviewing "[1] the elements of plaintiffs' prima facie case; [2] the facts on which the plaintiffs would necessarily rely to prove those elements[]; and [3] . . . determin[ing] to what extent those facts would also prove the claims of the absent class members."  Ealy v. Pinkerton Gov't Servs., Inc., 514 F. App'x 299, 305 (4th Cir. 2013) (citations and internal quotation marks omitted).  "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class."  Broussard, 155 F.3d at 340 (quoting Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998)).

A.   Counts I-II and IV-VII

Counts I-II and IV-VII all relate to the existence of the Lifetime Plan, and each count suffers similar flaws for purposes of class certification.

Under Count I, the plaintiffs claim that the defendants violated 29 U.S.C. § 1104(a)(1) by "misrepresenting the benefits to the plan beneficiaries" and "fraudulently induc[ing] the Plaintiffs into accepting the Lifetime Plan." ECF No. 103 ¶¶ 115, 117.  "In order to establish a claim for breach of fiduciary duty based on alleged misrepresentations, a plaintiff must show: 1) that a defendant was a fiduciary of the ERISA plan, 2) that a defendant breached its fiduciary responsibilities under the plan, and 3) that the participant is in need of injunctive or other appropriate equitable relief to remedy the violation or enforce the plan." Adams v. Brink's Co., 261 F. App'x 583, 589–90 (4th Cir. 2008).  "To prove the 'breach' element of this claim, a plaintiff must show that the defendant was acting in a fiduciary capacity when it made the representations, the information misrepresented was material, and the misrepresentation was relied upon to plaintiff's detriment." Damiano v. Inst. for In Vitro Scis., No. CV PX 16-0920, 2016 WL 7474535, at *4 (D. Md. Dec. 29, 2016) (citing

*James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002)).

Counts II, IV-VII require similar showings of reliance in connection with the Lifetime Plan.  Under Count II — which seeks equitable enforcement of the Lifetime Plan under § 1132(a)(1-3) — the plaintiffs again allege that they "detrimentally relied" on the defendants' "written representations, and consistent oral representations . . . by paying premiums and working for Defendants for at least ten years---thus foregoing other job opportunities, retiring earlier than they otherwise might have, and/or foregoing union representations."  ECF No. 103 ¶¶ 119-20.  As to Counts IV-VII, for the plaintiffs to "state a claim that a faulty plan description (including non-receipt of a proper SPD) prohibits a company from exercising its right to modify a plan," they again "must show some significant reliance upon, or possible prejudice flowing from, the lack of notice of an accurate description of the terms of the plan."  *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 858 (4th Cir. 1994) (internal quotation marks omitted) (denying certification where plaintiffs could not "verify that [they] did not receive the SPD").  Central to those Counts is the plaintiffs' claim that SPDs for the Lifetime Plan were not provided or were inaccurate or were not timely furnished.

Insofar as all of these claims hinge on the existence of the Lifetime Plan, the court turns first to the bits and pieces of written orientation materials that plaintiffs claim support the terms of the Lifetime Plan.  These include (1) several one-page Benefits Information Sheets from the years of 2012 and 2013 distributed to named plaintiffs Bright, Fitzwater, and other Fola retirees (ECF Nos. 72-4, 72-5; ECF No. 162 at 5), (2) several slides excerpted from PowerPoint presentations created in various years (2003, 2008, and 2010) and conducted at new-hire orientations at CONSOL's Buchanan Mine (ECF No. 156 at 4; Declaration of Erica Fisher ("Fisher Decl.") ¶¶ 7-9, ECF No. 160-4; ECF Nos. 155-6 to 155-8), (3) excerpts of new-hire orientation scripts delivered around 1990 at CONSOL's Enlow Fork and Bailey Mines in Pennsylvania (ECF No. 66-1; Declaration of Kurt Salvatori ("Salvatori Decl.") ¶¶ 4-6, 13, ECF No. 67-2), and (4) a "Know the Facts" handbill distributed by CONSOL and its subsidiaries to miners at the Fola operations around 2010 (ECF No. 66-5; see also Pls.' Mem. Supp. Mot. Cert. Class 5-6, ECF No. 64).

First, the plaintiffs point to the CONSOL one-page Benefits Information Sheet from each of the years 2012 and 2013. ECF Nos. 72-4, 72-5.  Each contains separate paragraphs describing certain benefits, including "Medical," "Prescription

Drug," "Dental Plan," "Vision Plan," "Life Insurance,"

"Investment Plan," and "Retirement Plan."  Id.  In particular,

the "Retirement Plan" paragraph states,

> Retirement Plan: Vested for early retirement with
> Medical.  (To be eligible to receive pension payment
> on 10/1/2013, complete and return benefit application
> to HR no later than 8/1/2013).  Retirement Plan may
> partially offset unemployment benefits (if eligible).
> Check with local Job Service center.

See ECF No. 72-5 (emphasis in original).  The discussion of

pension payments suggests that the "Retirement Plan" refers to

CONSOL pension benefits.  For decades, CONSOL has provided

pension benefits through the CONSOL Energy Inc. Employee

Retirement Plan ("Retirement Plan"), which had its own SPD that

changed from time to time and is entirely separate from the

Retiree Benefits Plan and the Active Employee Benefits Plan, let

alone the alleged Lifetime Plan.  Second Lackovic Decl. ¶ 11,

ECF No. 160-19; Id. Ex. K, ECF No. 160-23 at 205, CONSOL019388

(1992 Retirement Plan SPD).  The January 1, 2014 version of the

Retirement Plan, for instance, describes the annual pension

payments and mentions "ancillary benefits not directly related

to retirement benefits (such as . . . post-retirement medical

benefits)."  Id.  Ex. P, ECF No. ECF No. 160-24 at 232,

CONSOL023362.

Focusing on the Benefits Information Sheets, the

bottom of each one-page sheet notes that "[w]hether benefits are

payable and the amount of benefits will depend on the actual terms and conditions of the <u>applicable plan documents</u>" and includes an identical reservation of rights clause, stating, "All plans are subject to change or termination by CONSOL at any time." ECF Nos. 72-4, 72-5 (emphasis added).

Second, the plaintiffs provide three sets of undated, excerpted PowerPoint slides. CONSOL's Director of Human Resources, Erica Fisher, attested in her declaration that these slides were each part of larger new-hire orientation presentations — created in 2003, 2008, and 2010, respectively — given at Buchanan Mine. Fisher Decl. ¶¶ 2, 7-9, ECF No. 160-4; ECF No. 160 at 11. The plaintiffs assert that the "Equated Date Policy" referred to in all three presentations represents the company's policy that once attaining ten years of service and reaching the age of fifty-five, their medical benefits would vest. ECF No. 156 at 4; ECF Nos. 155-6, 155-7, 155-8. However, the slides themselves and Salvatori's deposition shows that an employee's "equated date" simply refers to his or her years of service with CONSOL, taking into account any service breaks. Salvatori Dep. 54:5-11, ECF No. 155-5.

The "Equated Date Policy" slide cited by the plaintiffs contains identical language in all three presentations: "Equated date will include only time

employed[;]" "Equated date will not include lay-off time[; and]" "Equated date will be used only for:" (1) "Vacation eligibility[,]" (2) "Service awards[,]" and (3) "Vesting only in retirement plan," i.e., the Retirement Plan for pension payments. ECF Nos. 155-6 to 155-8; Second Lackovic Decl. ¶ 11, ECF No. 160-19; Fisher Decl., Ex. C, ECF No. 160-9 at 49, CONSOL025652.

The plaintiffs only provide one full, sequential presentation — the 2003 new-hire orientation PowerPoint.[10] The introductory slide to the 2003 presentation titled "Pay and Benefits" indicates it covers the following topics: "Wages," "Work Schedule," "Overtime," "Holidays," "Vacations," "Salary Continuance," "Life Insurance," "Dental Insurance," "Medical Insurance," "Retirement Plan," and "Investment Plan." ECF No. 155-6 at 1, CONSOL025906. As with the other presentations, the "Equated Date Policy" slide does not mention medical benefits; neither does a "Retirement Plan" slide later in the orientation presentation. ECF No. 155-6 at 41. A separate section of the 2003 presentation regarding "Medical Insurance" begins with a slide titled, "Group Medical Plan," followed by several slides comparing UMWA to CONSOL in terms of "Deductibles,"

---

[10] The 2008 and 2010 PowerPoint excerpts only contain two, non-sequential slides: the "Equated Date Policy" slide and an identical introductory slide.

"Prescription Drugs," "Inpatient Physician Visit," "Inpatient Hospital," and "Out of Pocket" expenses.  Id. at 27-33.  There is no indication anywhere in the 2003 slide presentation that CONSOL's medical benefits included a lifetime guarantee.  Id. at 1-2, 27-40; ECF No. 156 at 4-5.

Third, the orientation scripts used at the Enlow Fork and Bailey mines around 1990 state, in pertinent part, that, "[t]his wage and benefit package is clearly superior to any wage and benefit package in the 1988 Wage Agreement," and is "clearly superior to any wage and benefit package negotiated by the UMWA for anybody anywhere."  ECF No. 66-1 at 7-9.  The plaintiffs infer that because UMWA retirement benefits "included a Congressionally-backed guarantee of lifetime duration," CONSOL's retirees would receive lifetime benefits as well.  ECF No. 103 ¶ 32; ECF No. 156 at 2, 5.  Not only does Salvatori's sworn statement indicate that these scripts were not used after the early 1990s, CONSOL's orientation presentations were specific to each mine site and varied in substance over the years.  See Salvatori Decl. ¶¶ 10-13, ECF No. 67-2.  Further, neither of the scripts furnished mention lifetime retiree medical benefits or retiree medical benefits.

Finally, the "Know the Facts" handbill distributed by CONSOL and its subsidiaries to Fola miners in 2010, states,

inter alia, that "[y]ou are eligible for Retiree Health Care . .
. once you have 10 years of service and reach age 55." ECF No.
66-5. It further concludes, "This is a better deal than the
UMWA negotiated in the national contract. AND REMEMBER, IT
DIDN'T COST YOU A PENNY IN DUES OR ASSESSMENTS." Id. Again,
this does not state that such benefits were "vested" or for
life.

Viewed in total, the written evidence presented by the
plaintiffs does not contain a promise of lifetime benefits.
Moreover, the plaintiffs admit that, in comparison to other
CONSOL employees, they may have seen or heard different things
regarding their benefits. And, none of the plaintiffs could
even confirm that the orientation materials contained a written
offer of "lifetime" benefits. For example, when Plaintiff Jack
was asked if he had any "idea what was told in other
orientations that [he] didn't attend," he answered: "I guess,
maybe, we were the only ones that ever heard the same thing."
Jack Dep. 97:12-19, ECF No. 155-11.

The plaintiffs counter that the Benefits Information
Sheets and other written materials contain ambiguous terms, and
therefore, the "extrinsic and anecdotal evidence regarding the
parties' intentions" is "directly relevant to the question of

whether the ambiguous terms gave rise to a vested benefit under ERISA." ECF No. 162 at 8.

Besides the testimony of named and putative plaintiffs, the plaintiffs present the Declaration of Dean Michael Hymes ("Hymes"), a former Regional Manager of Human Resources for CONSOL who was in charge of employee orientations, workers' compensation, union relations, and employee development and training. Hymes Decl. ¶ 5, ECF No. 155-4. It fails to fill in the gaps. As the defendants correctly point out, Hymes only worked for CONSOL until January 1993, and his testimony provides no evidence as to CONSOL's "state of affairs" after this date. Id. ¶ 6; ECF No. 160 at 12. Hymes described orientations at Buchanan, CONSOL of Kentucky, and Jones Fork mines until his departure from CONSOL in 1993. Other than potentially Casey,[11] Hymes could not testify as to what was shown to the remaining six named plaintiffs: Fitzwater, Bright, and Prater all started at CONSOL after 1993, Gilbert attended her orientation in 2005, and Jack and Long attended their new-hire orientations at Enlow Fork in 1991. See Fitzwater Dep. 13:7-15, ECF No. 173-2; Prater Dep. 11:21-23, ECF No. 173-3; ECF No. 36 ¶ 31; Gilbert Dep. 19:2-23, ECF No. 173-4; Hymes Dep. 173:3-25, ECF No. 173-1;

---

[11] Casey attended annual orientations since he began working at CONSOL in 1976, including orientations at the Buchanan Mine after transferring there in 1991. ECF No. 103 ¶¶ 47-50.

Hymes Decl. ¶¶ 5-6, ECF No. 155-4; Jack Dep. 17:18-23; 18:3-10, 95:24-100:22, ECF Nos. 155-11 and 173-5; Long Dep. 40:4-18, ECF No. 173-6; ECF No. 156 at 5-6.

Additionally, the defendants correctly point out that in his declaration, Hymes does not claim to have presented to any other employees the materials he helped prepare, and also provides no detail as to what the orientation scripts stated with respect to retiree medical benefits. Similar to the plaintiffs, once he was deposed, Hymes (1) could only testify to being "pretty sure" that retiree medical benefits were expressly mentioned in orientation scripts, Hymes Dep. 133:13-19, ECF No. 173-1; (2) could not recall exactly what was said in the orientation scripts regarding UMWA retiree medical benefits, Id. 133:20-25; (3) did not know whether there was any comparison at all during the orientations between the UMWA and CONSOL retiree medical benefits, Id. 139:2-7; and (4) had no recollection as to what the orientation slides specifically stated. Id. 142:20-24, 212:24-213:7.

Instead, Hymes acknowledged that the reservation of rights clause was "in the front of the employee handbook," Hymes Dep. 203:10-20, ECF No. 173-1, and that the handbooks were in fact distributed to employees at orientations. Id. 144:23-145:1, 203:10-16, 229:13-20. He admitted that the orientation

scripts he helped create "instructed the presenter to specifically address the Company's right in this regard" and that presenters reviewed the employee handbook sections that reserved CONSOL's right to terminate the benefit plans.  Id. 144:23-145:4, 225:22-226:14, 229:3-230:25.  He also testified that SPDs during his tenure were distributed at the orientations and that they contained the language that reserved CONSOL's right to terminate benefits.  Id. 142:25-144:22, 314:3-18, 322:24-323:16.

The plaintiffs also allege that "the promise of lifetime welfare benefits created the Lifetime Plan based on the oral representations made by Defendants."  ECF No. 103 ¶ 124. It bears mentioning that the SPDs are "the statutorily established means of informing participants of the terms of the plan and its benefits," and the "employee's primary source of information regarding employment benefits."  Aiken v. Policy Mgmt. Sys. Corp., 13 F.3d 138, 140 (4th Cir. 1993) (quoting Pierce v. Sec. Tr. Life Ins. Co., 979 F.2d 23, 27 (4th Cir. 1992)).

Moreover, "in recognition of ERISA's requirement that employee benefit plans be governed by written plan documents filed with the Secretary of Labor, any participant's right to a fixed level of lifetime benefits must be found in the plan

documents and must be stated in clear and express language."
Gable, 35 F.3d at 855 (internal citations and quotation marks
omitted).  As such, "ERISA prohibits informal written or oral
amendments of employee benefit plans, and references to lifetime
benefits contained in nonplan documents cannot override an
explicit reservation of the right to modify contained in the
plan documents themselves."  Id. at 857 (internal citations
omitted).

        Employers provide sufficient notice that they reserve
the right to modify plans by "distributing an SPD containing a
modification clause at any time before the modification or
termination occurs."  Id. at 858.  Here, the plaintiffs admit
that the SPDs they received reserved the defendants' right to
terminate or alter the plans at any time.  See, e.g., Bright
Dep. 22:22-24, 18:15-19:21, ECF No. 67-6; Hymes Dep. 314:22-
328:22, ECF. No. 173-1.

        As to the oral representations more generally,
"[s]everal courts have concluded that ERISA fiduciary claims
based on oral representations are not suitable for class
certification precisely because they require . . .
individualized proof, and thus fail the commonality and
typicality requirements."  Tootle v. ARINC, Inc., 222 F.R.D. 88,
96 (D. Md. 2004) (citing Gesell v. Commonwealth Edison Co., 216

F.R.D. 616, 623–25 (C.D. Ill. 2003)); Mick v. Ravenswood
Aluminum Corp., 178 F.R.D. 90, 92–94 (S.D.W. Va. 1998); Sprague,
133 F.3d at 398 (finding commonality lacking because "there must
have been variations in the early retirees' subjective
understandings of the [oral] representations and in their
reliance on them").

        In Tootle v. ARINC, Inc., the defendants argued that
the information disseminated to employees regarding a cash
balance pension plan "included oral, non-uniform communications
made in group and one-on-one meetings." 222 F.R.D. at 96. The
plaintiff countered that though these meetings occurred, its
claims "relie[d] exclusively on various written communications
that apparently were distributed uniformly to ARINC employees."
Id. at 96 n.16. Tootle nonetheless denied class certification
inasmuch as it would "need to evaluate any oral representations
made to class members attending these meetings – which could
vary significantly among the class members – to determine if
these representations are sufficient to overcome" the misleading
effect of "any alleged omissions in the written materials on
which Tootle relies." Id. at 96.

        Here, the plaintiffs expressly rely on scattered oral
representations of "lifetime benefits" as evidence of a Lifetime
Plan. See, e.g., ECF No. 103 ¶¶ 2, 87, 124-25; ECF No. 156 at

4-8; ECF No. 162 at 1-2, 5-6.  While some of the plaintiffs may very well have received such a promise, the evidence does not support their contention that this was a uniform message across the different mine sites over the decades.

The plaintiffs rely on allegations that around 2010, Gary Patterson, President of Operations of Fola, allegedly told Fitzwater and "other CONSOL employees that they would have their then-current insurance as long as they lived."  ECF No. 36 ¶ 39. The complaint alleges that Chase Elswick, a human resources supervisor, "came to the Fola control room where Plaintiff Fitzwater worked, and told [him] that the current healthcare benefits would vest upon retirement and continue throughout Mr. Fitzwater's lifetime."  Id. ¶ 40.  It further alleges that Elswick told the "same thing" to Fola miner Ted Stephenson and his wife, "among other miners and their dependent beneficiaries."  Id. ¶ 40.  The plaintiffs also allege that CONSOL's Manager of Human Resources, Gerald Kowzan, told Fitzwater and other miners at Fola around this same time: "Don't worry, you'll have this insurance for life" and "offered them a package" he claimed to be "better than the union" and that they could "have this insurance until [they] die."  ECF No. 36 ¶¶ 41-42.  This court, too, would need to evaluate these types of oral representations made to individual class members, or groups of

class members, to determine if they offset the representations in the SPDs and other written materials.  _Tootle_, 222 F.R.D. at 96.

Accordingly, without written materials showing the existence of a Lifetime Plan, the court cannot find that the plaintiffs satisfy the requirements of commonality and typicality necessary for class certification.  The various oral assurances of lifetime benefits, requiring proof of the individual statements made to each retiree, are insufficient to support class certification on their own.

Moreover, the defendants provided declarations of several CONSOL human resources personnel who deny ever making oral promises of lifetime or vested medical benefits or using written materials in orientation trainings that contain such promises.  _See_ ECF No. 160 at 14.  Those declarations state that a comparison of pay and employee benefits between that of UMWA employees and that of non-union CONSOL employees was made, and that the only reference to retiree benefits during the comparison was related to pensions and the cost of retiree medical coverage at that time.  _See, e.g._, Declaration of Craig Campbell ¶ 8, ECF No. 160-10.  They further state that employees at orientations received benefit binders containing the SPDs in addition to employee handbooks that summarized the benefits more

generally. Id. ¶¶ 9, 12. The human resources personnel reviewed each page of the handbooks and particularly discussed the language that reserved CONSOL's right to modify, suspend, or terminate the benefit plans. Id. Indeed, several of the named plaintiffs admit themselves that they received SPDs and were aware of the reservation of rights clause before their plans were modified or terminated. See, e.g., Casey Dep. 171:13-172:11, 232:10-24, ECF No. 160-16; Long Dep. 45:9-16; 97:7-99:6, ECF No. 160-2. Finally, although the topics presented at Buchanan, Fola, and the CONSOL of Kentucky mines were generally similar, each mine location presentation had its own written materials, including the presenters' own speaker notes he or she would use alongside the PowerPoint slides. "This is because there were differences in the orientation that were specific to the particular operation." Declaration of Gerald Kowzan ¶¶ 12-14, ECF No. 160-14.

While it is to be acknowledged that courts may not "'engage in free-ranging merits inquiries at the certification stage,' a court should consider merits questions to the extent 'that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" EQT Prod. Co., 764 F.3d at 358 (quoting Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 568 U.S. 455, 466 (2013); Hudson v. Delta

Air Lines, Inc., 90 F.3d 451, 457 (11th Cir. 1996) ("[E]vidence relevant to the commonality requirement is often intertwined with the merits.").

In Hudson v. Delta Air Lines, Inc., for instance, the Eleventh Circuit "probe[d] behind the pleadings before coming to rest on the certification question" regarding ERISA claims somewhat similar to this case. 90 F.3d 451, 457 (11th Cir. 1996) (quoting General Tel. Co. of SW, 457 U.S. at 160. In Hudson, former Delta employees sought to certify claims that the company violated ERISA by allegedly assuring retirees that they were entitled to the same level of medical benefits coverage throughout the course of their retirement. Id. at 453. The retiree plaintiffs also alleged that Delta fraudulently induced them into retiring earlier and unlawfully discriminated against retirees by extending a preferred retirement package ("Special Retirement Plan") to then-active employees. Id. In affirming the denial of class certification for lack of commonality, Hudson found that the claim that an enforceable ERISA plan existed would "require proof of written plan documents which notified the putative class that the terms of their medical benefits plan would remain constant throughout their retirement," which the plaintiffs failed to provide. Id. at 457 (emphasis in original). The same is true here.

Even if the plaintiffs could show a promise of lifetime benefits, they would still need to show the extent to which each retiree relied on the alleged representations in making his or her retirement decision. Courts have denied class certification on ERISA fiduciary claims based on alleged misrepresentations because establishing the detrimental reliance element requires a showing of individualized proof. Gunnells, 348 F.3d at 434. In Hudson, the court found that "[e]ven if the plaintiffs are able to prove that Delta disseminated a false and uniform message to all potential retirees . . . , they would also have to show that all members of the class would have deferred their retirement in the hope that they would be eligible for the Special Retirement Plan to be offered in the future." 90 F.3d at 457. As is the case here, "[t]his sort of decision would necessarily have been highly individualized for each potential retiree." Id.

In this case, evaluating the element of detrimental reliance will require individualized inquiries into the basis for class members' decisions to "work the required service time for Defendants." ECF No. 156 at 2. The plaintiffs note that "Jack testified that the Defendants' representations of lifetime benefits were uniform and significant and caused himself and other CONSOL Employees to plan their working lives based on

those representations – such as time of retirement and whether to seek other lower paying jobs that offered better retiree welfare benefits, such as the UMWA benefits." ECF No. 156 at 5 (citing Jack Dep. 170-173, ECF No. 155-11). Yet, named plaintiff Long testified that he was not similarly affected:

> Q: And did you retire earlier than you otherwise would have because of any promises that were made to you regarding retiree medical benefits?
> . . .
> A: No.
> Q: And did you ever reject a more lucrative job opportunity because of any promises you were made regarding retiree medical benefits?
> . . .
> A: No.

Long Dep. 185:9-20, ECF No. 160-2.

In sum, the lifetime claims lack the support of written materials demonstrating a uniform Lifetime Plan, the oral representations are spotty and divergent, and both will require individualized proof, including proof of reliance. Consequently, Counts I-II and IV-VII fail to meet the commonality and typicality requirements under Rule 23(a).

B.    Count III

As noted previously, unlike active employees at the time, individuals who retired prior to the 2014 announcement did not receive the option to receive a one-time transition payment as compensation for the termination of their retiree health and

welfare benefits.  Under Count III, the defendants allegedly violated 29 U.S.C. § 1182(a)(1)[12] of ERISA by unlawfully establishing rules for eligibility for the transition payment based on health-status related factors and violated § 1182(b)[13] by offering the transition payment to active employees while requiring retired employees to continue paying premiums after the 2014 announcement.  ECF No. 103 ¶¶ 126-134.  In other words, the defendants purportedly discriminated against individuals who had retired as of September 30, 2014 by terminating their welfare benefits without providing them the same cash transition payment given to active employees.  ECF No. 156 at 23.

---

[12] Section 1182(a)(1) provides, "Subject to paragraph (2), a group health plan . . . may not establish rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan based on any of the following health status-related factors in relation to the individual or a dependent of the individual: (A) Health status. (B) Medical condition (including both physical and mental illnesses). (C) Claims experience. (D) Receipt of health care. (E) Medical history. (F) Genetic information. (G) Evidence of insurability (including conditions arising out of acts of domestic violence). (H) Disability."  29 U.S.C. § 1182(a)(1).

[13] Section 1182(b) provides, "A group health plan . . . may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b).

As with the other claims, the plaintiffs have failed to meet their burden under Rule 23.  EQT Prod., 764 F.3d at 357. As explained supra, the plaintiffs must "present evidence that the putative class" demonstrates "actual, not presumed, conformance with Rule 23(a)."  EQT Prod. Co., 764 F.3d at 357, 361-62 ("To even demonstrate commonality, the plaintiffs must prevail on their reading of the case.  That is, they must establish that the common question[s] . . . will be answered in their favor.").  Denying class certification is appropriate where the named plaintiffs fail to state a claim upon which relief can be granted and therefore "all other similarly situated plaintiffs would likewise fail to state a claim." Boulware v. Crossland Mortgage Corp., 291 F.3d 261, 268 n.4 (4th Cir. 2002); see also Smith v. Pennington, 352 F.3d 884, 896 (4th Cir. 2003) (affirming denial of class certification where named plaintiff "d[id] not himself state a claim" because his "position would not then be typical of anyone . . . who did state a claim").

To bring a claim under 29 U.S.C. §§ 1182(a)-(b), the plaintiffs must first show that the defendants discriminated based on prohibited "health status-related factors," including health status, medical condition (including both physical and mental illnesses), claims experience, receipt of health care,

medical history, or disability.[14]  Section 1182(a)(2)(B) notes

that nothing in the statute "prevent[s] . . . a plan or coverage

from establishing limitations or restrictions on the amount,

level, extent, or nature of the benefits or coverage for

similarly situated individuals enrolled in the plan or

coverage."  That is, plan provisions are not impermissibly

discriminatory if they apply uniformly to similarly situated

plan members.  <u>See</u> <u>Zurich Am. Ins. Co. v. O'Hara</u>, 604 F.3d 1232,

1238 (11th Cir. 2010); 29 C.F.R. § 2590.702(b)(2)(i)(B) (stating

that "benefits provided under a plan ... must be uniformly

available to all similarly situated individuals").

First, the plaintiffs contend that retirement-

eligible, though not retired, employees "were part of the same

similarly-situated group of plan participants who had already

retired insofar as they participated in the same plan."  ECF No.

---

[14] The regulations governing 29 U.S.C. § 1182 provide examples of potential discrimination under this section.  For "claims experience," it provides the following hypothetical: "An employer sponsors a group health plan and purchases coverage from a health insurance issuer.  In order to determine the premium rate for the upcoming plan year, the issuer reviews the claims experience of individuals covered under the plan.  The issuer finds that Individual F had significantly higher claims experience than similarly situated individuals in the plan.  The issuer quotes the plan a higher per-participant rate because of F's claims experience."  The regulations conclude that this is not unlawful "because the issuer blends the rate so that the employer is not quoted a higher rate for F than for a similarly situated individual based on F's claims experience."  29 C.F.R. § 2590.702(c) (Example 1).

162 at 13.  To the extent Count III asserts that the defendants discriminated against participants within the alleged Lifetime Plan, and thereby requires evidence of a Lifetime Plan in the first place, it is inappropriate for class certification, as found with respect to the other Counts.

Even assuming the retirement-eligible and retired employees participated in the same plan, the plaintiffs fail to show how distinguishing between current and former employees is unlawful under ERISA.  According to the Department of Labor ("DOL") regulations governing § 1182, "a plan or issuer may treat participants as two or more distinct groups of similarly situated individuals if the distinction between or among the groups of participants is based on a bona fide employment-based classification consistent with the employer's usual business practice."  29 C.F.R. § 2590.702(d)(1).  Examples of a "bona fine employment-based classification" include "full-time versus part-time status, . . . date of hire, length of service, [and] current employee versus former employee status."  Id.  The plaintiffs allege that the rules for the transition payment "were based on health status because they distinguished between those who were entitled to receive the payout and those who were not based on the retirement status of those individuals," see ECF No. 103 ¶ 132, but the DOL regulations explicitly allow

employment-based classifications between active and retired employees.[15]

The plaintiffs rely on the assumption that the retirees necessarily "had a lengthier claims experience . . . and also tended to be less healthy due to their advanced age relative to the active workers." ECF No. 103 ¶ 130. The defendants correctly point out that there "is no evidence that any Defendant took any action based on the actual or perceived health status of any individual group." ECF No. 160 at 18. Some of the plaintiffs themselves also admit that they had "no idea" whether CONSOL decided to offer transition benefits based on who was healthier or more active. Prater Dep. 130:8-131:23, ECF No. 66-7; Bright Dep. 77:10-19, ECF No. 67-6. The plaintiffs only point to Kirby Hall, a 51-year-old absent class member, to demonstrate that the retirees are either disabled or older than some active employees. ECF No. 156 at 2 n.1. The plaintiffs fail to provide any other evidence to support the claim that "[a] substantial portion of the retiree welfare plan participants were necessarily in poorer health than the active workers." Id. The mere fact that retirees and active employees

---

[15] "[T]he rules of this section would not prohibit a plan or issuer from treating one group of similarly situated individuals differently from another (such as providing different benefit packages to current and former employees) . . . ." 29 C.F.R. § 2590.702(h).

were treated differently does not support the assertion that they were discriminated against based on their health status under § 1182.[16]

Inasmuch as the plaintiffs fail to provide basic evidence to support their claim, Count III fails to conform to Rule 23(a)'s requirements and class certification must be denied on this count.

## V. Conclusion

Because the plaintiffs' claims fail to comply with Rule 23(a)'s requirements, it is ORDERED that the plaintiffs' supplemental motion for class certification be, and it hereby is, denied.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: October 15, 2019

John T. Copenhaver, Jr.
Senior United States District Judge

---

[16] A CONSOL PowerPoint presentation dated October 1, 2014 explains that CONSOL decided to terminate retiree health and welfare benefits to remain competitive with other companies. It notes that "the number of large companies offering retiree medical benefits has dropped significantly. The major reason for this is that healthcare costs have increased 600% since 1978." ECF No. 155-14 at 7, CONSOL003854.