**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**BENNY FITZWATER, CLARENCE BRIGHT,
and TERRY PRATER, EMMETT CASEY, JR.,
CONNIE Z. GILBERT, ALLAN H. JACK SR.,
and ROBERT H. LONG, on behalf of themselves
and others similarly situated,**

      **Plaintiffs,**

**v.**                                                                 **Civil Action No. 2:16-cv-9849
(Hon. John T. Copenhaver, Jr.)**

                                            **Consolidated with:
Civil Action No. 1:17-cv-3861**

**CONSOL ENERGY, INC., CONSOLIDATION
COAL CO., FOLA COAL CO., LLC, CONSOL
OF KENTUCKY, INC., CONSOL PENNSYLVANIA
COAL CO., LLC and KURT SALVATORI,**

      **Defendants.**

## PLAINTIFFS' RENEWED MOTION TO CERTIFY CLASS

NOW COME the Plaintiffs and file this Renewed Motion to Certify a Class under Rule 23, as set forth more fully in the accompanying Memorandum. Pursuant to the scheduling order, the Parties have developed expert and testimonial evidence over recent months, focusing on the relatively narrow issue of whether Defendants treated Plaintiffs differently based on their "claims experience," which is a protected status under ERISA, 29 U.S.C. § 1182. Evidence demonstrates that, as between two groups of similarly-situated participants within the CONSOL Energy Inc. Retiree Health and Welfare Plan, Defendants directed more favorable benefits to the approximately fifty retirees with the least claims experience under that Plan---and offered less favorable benefits to the putative class whose claims experience had been costlier for CONSOL.

## I.    FACTS RELEVANT TO THIS MOTION

When CONSOL Energy, Inc. ("CONSOL") curtailed their retiree welfare benefit plan in 2014, they announced a five-year transition in which the retiree plan would end by December 31, 2019. (Letter terminating lifetime duration of Retiree Welfare Plan, Ex. 1) At the same time, for then-current employees who were covered by the CONSOL Energy, Inc. Welfare Plan (the CONSOL Welfare Plan, *i.e.*, the "Active Welfare Plan"), CONSOL announced a one-time financial benefit (the "Active Transition Benefit") in lieu of eligibility for CONSOL's Retiree Welfare Plan: $2,500 for those with 0-4 years of credited service, $5,000.00 for 5-9 years, $10,000.00 for 10-14 years, $25,000.00 for 15-19 years, $50,000.00 for 20-24 years, $75,000.00 for 25-29 years, and $100,000 for 30 or more years. (CONSOL000066-99, Ex. 2 (spreadsheets setting forth Active Transition Benefits and criteria); Dep. of Terry Prater at 26-27, 123-124, Ex. 3; Rpt. of Harvey Bjelland at 14, Ex. 4). These Active Transition Benefits were offered to all active workers regardless of whether those individuals had reached the age of 55 and 10 years of credited service, including active workers who had not qualified for the Retiree Welfare Plan with less than ten years of service).  (Ex. 2, noting payments of $5,000.00 apiece to 563 active workers, and $2,500 apiece to 754 active workers).

For those active workers who had attained 10 years of credited service and reached age 55 by September 30, 2014, they faced a choice: a) retire then, enroll in the Retiree Welfare Plan, and receive the five-year transition period that CONSOL was offering to retirees under the Retiree Welfare Plan, **or** b) remain an active employee, do not retire, and accept the cash transition benefit that CONSOL was paying to all the employees under the Active Welfare Plan. Four hundred fifty-nine (459) active workers with over ten years of service opted to receive the

cash transition benefits under the Active Plan (Ex. 2) . Fifty active workers who had both attained ten years of service, and reached age fifty-five by Sept. 30, 2014, opted to leave the Active Welfare Plan and to enroll in the Retiree Welfare Plan on or after Sept. 30, 2014.  (Ex. 5, CONSOL017077, email June 10, 2015 from Deb Lackovic to Kurt Salvatori); Ex. 6, spreadsheet produced by CONSOL listing individuals who received Retiree Transition Benefits, and setting forth the computation for those benefits))

In June 2015, CONSOL announced its decision to terminate retiree welfare benefits at the end of the 2015 calendar year for all the plan participants except for the approximately fifty who received the Retiree Transition Benefit during December 2015 and January 2016. (Ex. 5 at 1-6) (letters announcing termination and Retiree Transition Benefits).  For the select group of individual Retiree Welfare Plan participants---i.e. fifty who had only enrolled in the retiree welfare plan on or after Sept. 30, 2014 and nine surviving spouses---CONSOL offered an extended benefit comprised of a new cash transition benefit that was paid out from December 2015 through January 2016. (*Id*.; Ex. 6)

This new, extended benefit (the "Retiree Transition Benefit") allowed those roughly fifty Retiree Welfare Plan participants to receive a greater value of benefits than the other Retiree Welfare Plan participants. (Letter from Kurt Salvatori to spouse of retiree, Oct. 16, 2015, Ex. 7 ("As the decisions of the Company were cost cutting measures, we did not make them retroactive. We cannot start now making retroactive adjustments or exceptions in clearly defined programs without reopening the program for all affected person[s]"); (Dep. of Allan Jack, Ex. 8 at 183:15-18, 185:15-16) ("We were under the same plan; only we got kicked to the curb, because, as we get older, we have a lot of ailments, and it cost the company lots of money for

health care. [...] And my 20 years. So I should have gotten the $50,000.”). Life insurance benefits under the Retiree Welfare Plan were not terminated for any of the non-union retirees until March 8, 2016. (email regarding termination of life insurance, CONSOL018048, Ex. 9).

The Retiree Transition Benefits were set by CONSOL at the following values, equivalent to eighty percent of the value of the Active Transition Benefit: $8,000.00 for those with 10-14 years of credited service, $20,000.00 for 15-19 years, $40,000.00 for 20-24 years, $60,000.00 for 25-29 years, and $80,000 for 30 or more years. (Ex. 6; Ex. 3 at 123-127, Dep. of Terry Prater). The Retiree Transition Benefits were provided as benefits for those on the Retiree Welfare Plan, as opposed to the Active Welfare Plan. (Dep. of C. Kristopher Hagedorn, Ex. 10 at 48, 56) (“The fact that the participant isn’t an active employee that has to earn benefits would preclude this from being a [defined contribution] plan.”); (Ex. 11, email from Deb Lackovic to Mark Hrutkay and attached notice to retirees regarding Retiree Transition Benefits, stating “In order to receive this payment from the Plan, you must complete the attached acknowledgement form and return it to the Corporate Benefits Department by October 31, 2015.”).

The retirees who had paid premiums to the Retiree Welfare Plan since September 30, 2014 received the Retiree Transition Benefits from the Retiree Welfare Plan. (Dep. of Terry Prater, Ex. 3 at 125-127, 134:24-25) (indicating that, after having retired from CONSOL, he paid $100 per month as a premium for welfare benefits, and that he received the Retiree Transition Benefit even though he never submitted the acknowledgement form that CONSOL requested in its June 2015 announcement regarding Retiree Transition Benefits); (Dep. of Emmett Casey, Ex. 12 at 253-256, 359:11-360:11) (discussing that he paid healthcare premiums to CONSOL during his working life and retirement); [*cf.* ECF Doc. # 66-6 (Dep. of Clarence Bright, seeking return

of premiums paid)]. Notably, CONSOL did not provide any such transition benefit to the other retirees---all of whom had more claims experience on the Retiree Welfare Plan than those who had only just enrolled within the past year. (Ex. 3, Dep. of Prater at 132:22-25) ("And the people that had retired in years prior to me had put in years, they wasn't -- they didn't get anything. They was just cut off flat.") Defendant Kurt Salvatori recommended to CONSOL's CEO that the company terminate all retiree medical in 2015. (Dep. of Salvatori, Ex. 13 at 111, 116 (noting Salvatori made the recommendation to CONSOL's CEO to terminate retiree medical benefits in 2015)) Salvatori stated that making a transition payment to all the inactive participants (those who had retired before September 30, 2014) "really was never a consideration because the people that you're describing, the inactive, had received the benefit for a period of time. [i.e. had lengthier claims experience]." (Ex. 13 at 186:10-187:15, Dep. of Salvatori)

CONSOL distributed the Retiree Transition Benefits to the fifty individuals during a period extending from December 2015 through January 2016. As a result, the fifty individuals were eligible to receive the extended benefits during a chronological period that extended later in time after the remainder of the non-union retirees were no longer eligible for benefits under the Retiree Welfare Plan. The Retiree Welfare Plan, which was also known as Plan No. 583, has continued to exist after December 2015. (Ex. 13 at 181-182, Dep. of Salvatori).

## II.    ARGUMENT

As set forth more fully in the Memorandum that accompanies this Motion, the Plaintiffs seek legal and equitable relief for discrimination under 29 U.S.C. § 1182, which prohibits discrimination in the rules for eligibility, premiums, or contributions in employee welfare benefit plans when the discrimination is based on health status-related factors such as "claims

experience." (*cf.* Order at 40 (Oct. 15, 2019) (discussing § 1182) [ECF Doc. #203].)  Defendants

directed a rule that limited eligibility for the Retiree Transition Benefits to the individual Retiree

Welfare Plan participants who had the least claims experience under that Plan---and that denied

those benefits to the retirees who had the greater claims experience.

Plaintiffs propose the following class definition:

> All individuals who were participants or surviving beneficiaries covered
> by the CONSOL Energy Inc. Retiree Health and Welfare Plan, whose
> benefits were terminated in 2015, and to whom CONSOL did not offer the
> same transition benefit provided to those participants who joined the Plan
> on or after September 30, 2014.

This proposed class action involves the following common questions of fact and law:

1. Whether the class members were participants or eligible beneficiaries in the
   Retiree Welfare Plan;

2. Whether the Defendants established a "rule of eligibility" when they denied the
   members of the putative class the ability to receive the Retiree Transition Benefit
   that they provided to participants with less claims experience;

3. Whether Defendants disparately treated the putative class in violation of 29
   U.S.C. § 1182

4. What remedies are available due to the Defendants' violation of 29 U.S.C. §
   1182?

The Memorandum in support of this Motion sets forth the suitability of the proposed

class for certification under the requirements of Rule 23(a) and (b). In brief, the class claims arise

out of a common transaction by the Defendants and a common legal theory: CONSOL's action of depriving the Retiree Transition Benefits to the putative class violated 29 U.S.C. § 1182.

## III.   CONCLUSION

For the reasons set forth in this Motion and the accompanying Memorandum, and any others appearing to the Court, the Plaintiffs respectfully request the following relief:

1) Conditionally certify a class with the following class definition:

   All individuals who were participants or surviving beneficiaries covered by the CONSOL Energy Inc. Retiree Health and Welfare Plan, whose benefits were terminated in 2015, and to whom CONSOL did not offer the same transition benefit provided to those participants who joined the Plan on or after September 30, 2014.

2) Conditionally appoint Bren Pomponio and Sam Petsonk to serve as class counsel, and Benny Fitzwater, Clarence Bright, Emmett Casey, Jr., Bob Long, and Allan Jack to serve as class representatives.

3) Permit the Parties 60 days to conduct limited discovery on class issues and damages.

4) Direct conditional class counsel to propose to this Court an appropriate notice to the class certified.

5) Any further relief deemed proper by the Court.

**BENNY FITZWATER, CLARENCE BRIGHT, TERRY PRATER, EMMETT CASEY, JR., CONNIE Z. GILBERT, ALLAN H. JACK SR., and ROBERT H. LONG, on behalf of themselves and others similarly situated,**

**By Counsel:**

    /s/ Samuel B. Petsonk
Samuel B. Petsonk (WVSB # 12418)
Bren Pomponio (WVSB # 7774)
Aubrey Sparks (WVSB # 13469)
223 Prince Street
Beckley, WV 25801
Phone: (681) 207-7510
Fax: (681) 207-7513
sam@msjlaw.org
bren@msjlaw.org
aubrey@msjlaw.org