# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| BENNY FITZWATER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 2:16-cv-9849 |
| v. | ) | |
| | ) | Hon. John T. Copenhaver |
| CONSOL ENERGY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| EMMETT CASEY, JR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:17-cv-3861 |
| | ) | |
| CONSOL ENERGY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION TO CERTIFY CLASS OR IN THE <u>ALTERNATIVE, MOTION TO ALTER OR AMEND ORDER</u>**

/s/ Samuel B. Petsonk
Samuel B. Petsonk (WVSB # 12418)
Petsonk PLLC
PO Box 1045
Beckley, WV 25802
(304) 900-3171
(304) 986-4633 (fax)
sam@petsonk.com

Bren Pomponio (WVSB # 7774)
Aubrey Sparks (WVSB # 13469)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, WV 25301
(304) 344-3144
(304) 344-3145 (fax)
bren@msjlaw.org
aubrey@msjlaw.org

## I. INTRODUCTION

Plaintiffs have renewed their Motion for Class Certification arguing that this Court's previous Order denying class certification had not specifically addressed Plaintiffs' claim that Defendants discriminated against them based on the protected health status-related factor of "claims experience." Defendants oppose the renewed motion contending that the Court has already ruled on this specific claim, and that Plaintiffs have failed to present any evidence of discrimination based on claims experience. As the following discussion demonstrates, under the applicable standard for discrimination under ERISA, Plaintiffs have presented undisputed evidence that CONSOL issued a rule that denied the putative class transition benefits based on claims experience, in violation of 29 U.S.C. § 1182, which should be considered for the purpose of the pending renewed Motion to Certify Class.

## II. FACTS RELEVANT TO THIS MOTION

Defendant contends that Plaintiffs have failed to offer evidence in support of their renewed motion or at times misrepresented the evidence. The following dispositive facts developed through discovery are undisputed and demonstrate class certification is appropriate on Count III.

In June 2015, CONSOL announced its decision to terminate retiree welfare benefits at the end of the 2015 calendar year for nearly all the plan participants. [ECF Doc. # 226, Pls.' Renewed Mot. to Cert. Class, Ex. 5] However, for the approximately fifty individual Retiree Welfare Plan participants who had only enrolled in the retiree welfare plan on or after Sept. 30, 2014 and surviving spouses, CONSOL offered an extended benefit comprised of a new cash transition payment that was paid out from December 2015 through January 2016. [ECF Doc. # 226, Pls.' Renewed Mot. to Cert. Class, Ex. 5, 6] This new, extended benefit (the "Retiree Transition Benefit") allowed those fifty individuals to receive a greater value of benefits, and to remain on

the plan for longer (into 2016) than the other Retiree Welfare Plan participants. [ECF Doc. # 226, Pls.' Renewed Mot. to Cert. Class, Ex. 7]

CONSOL did not provide the other retirees – all of whom undisputedly had more claims experience on the Retiree Welfare Plan than those who had only just enrolled within the past year – the extended benefit. ([ECF Doc. # 226, Pls.' Renewed Mot. to Cert. Class, Ex. 12 (Dep. Tx. Of Salvatori, 181-182)].[1]) CONSOL distributed the Retiree Transition Benefits to the fifty individuals during a period extending from December 2015 through January 2016. As a result, the approximately fifty individuals were eligible to receive the extended benefits during a chronological period that extended later in time after the remainder of the non-union retirees were terminated from the Retiree Welfare Plan, which continued to exist and continues to exist to this day for certain limited purposes. [*Id.*]

### III. LEGAL DISCUSSION

Defendants' principal contention in opposition the renewed Motion to Certify Class is that Plaintiffs have failed to present additional evidence to support their claim in Count III beyond what the Court considered in its previous Order denying class certification. However, the Court's previous ruling did not address specifically Plaintiffs' claim of discrimination based on claims experience, and the undisputed evidence highlighted by this renewed motion establishes class certification is appropriate on Count III. Defendants' opposition rests largely on a misapplication of law: that 29 U.S.C. § 1182 requires a showing of specific intent to discriminate.

---

[1] Defendant disputed the Plaintiffs' citations to the testimony of Defendant Kurt Salvatori. (Defs.' Resp. in Opp. to Plfs.' Renewed Mot. to Cert. (hereinafter "Defs.' Resp.") at 11-12 [ECF Doc. # 233].) However, Plaintiffs accurately quoted Mr. Salvatori's deposition testimony and simply pointed out that his testimony supports the undisputed fact that CONSOL failed to provide the transition benefit to the putative class, all of whom had more claims experience than the active workers.

In fact, discrimination under ERISA may be proven by traditional means of showing disparate treatment or disparate impact – both of which are supported by the expert and testimonial evidence in this case. The following discussion makes clear that the evidence presented establishes that CONSOL impermissibly discriminated against the putative class when it failed to offer transition benefits it had offered to the approximately fifty workers who undeniably had less claims experience. No evidence of specific intent to discriminate is required by the statute and the implementing regulations. Accordingly, Plaintiffs' Motion to Certify should be granted.

**A.      Plaintiffs Renewed Motion to Certify Is Timely Pursuant to Rule 23(c)(1)(C).**

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Final judgment has not been entered; therefore, despite Defendants' suggestion, under a plain reading of the Rule, Plaintiff's motion is timely. Admittedly, a motion seeking reconsideration of an order denying certification is not freely given. Courts are most likely to reconsider its prior if the subsequent certification motion rests on (1) a change in controlling law; (2) new evidence; or (3) remedies a manifest injustice or clear error of law. 3 Newberg on Class Actions § 7:35 (5th ed.). In considering a motion to reconsider a previous order denying certification, courts tend to evaluate the motion pursuant to the law of the case doctrine. *Id*.

> Actual decision of an issue is required to establish the law of the case. Law of the case does not reach a matter that was not decided. As compared to claim preclusion, it is not enough that the matter could have been decided in earlier proceedings.

18B Wright & Miller, Fed. Prac. & Proc. Juris. § 4478 (2d ed.); *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001) ("[U]nlike res judicata, the law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not."). "The law of the case doctrine is admittedly

discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

Contrary to the Defendants' suggestion, Plaintiffs' renewed Motion to Certify Class is not a simple reconsideration of an issue that was previously decided by the Court. Rather, the motion seeks a ruling on an issue that was not previously decided: whether there is evidence CONSOL discriminated against the putative class based on claims experience, in violation of 29 U.S.C. § 1182. The Court did not have the benefit of expert testimony, additional evidence, and argument relating to the Plaintiffs' claims experience discrimination claim. It is evident in its previous Order, the Court did not consider evidence of claims experience of the putative class, but rather their health status:

> The plaintiffs rely on the assumption that the retirees necessarily "had a lengthier claims experience . . . and also tended to be less healthy due to their advanced age relative to the active workers." ECF No. 103 ¶ 130. The defendants correctly point out that there "is no evidence that any Defendant took any action based on the actual or perceived health status of any individual group." ECF No. 160 at 18. Some of the plaintiffs themselves also admit that they had "no idea" whether CONSOL decided to offer transition benefits based on who was healthier or more active. Prater Dep. 130:8-131:23, ECF No. 66-7; Bright Dep. 77:10-19, ECF No. 67-6. The plaintiffs only point to Kirby Hall, a 51-year-old absent class member, to demonstrate that the retirees are either disabled or older than some active employees. ECF No. 156 at 2 n.1. The plaintiffs fail to provide any other evidence to support the claim that "[a] substantial portion of the retiree welfare plan participants were necessarily in poorer health than the active workers." Id. The mere fact that retirees and active employees were treated differently does not support the assertion that they were discriminated against based on their health status under § 1182.16.

(Mem. Op. & Order at 43-44 (Oct. 15, 2019) [ECF Doc. # 203].) The Court now has before it newly-developed evidence that CONSOL discriminated against the putative class based on their claims experience. Accordingly, the renewed Motion to Certify Class seeks a decision not previously decided, based on new evidence and to remedy an error of law.

5

**B.  Plaintiffs' Produced Undisputed Evidence That CONSOL Discriminated Against the Putative Class in Violation of ERISA, 29 U.S.C. § 1182.**

Defendant fails to respond to the most significant legal authority cited that CONSOL's failure to offer the transition benefits to the retirees violated 29 U.S.C. § 1182: The United States Department of Labor's regulations. The following illustrative examples are directly applicable to CONSOL's challenged action in this case, and are worth setting forth again at length:

> Example 1. (i) Facts. An employer sponsors a group health plan and purchases coverage from a health insurance issuer. In order to determine the premium rate for the upcoming plan year, the issuer reviews the claims experience of individuals covered under the plan. The issuer finds that Individual F had significantly higher claims experience than similarly situated individuals in the plan. The issuer quotes the plan a higher per-participant rate because of F's claims experience.
>
> (ii) Conclusion. In this Example 1, the issuer does not violate the provisions of this paragraph (c)(2) because the issuer blends the rate so that the employer is not quoted a higher rate for F than for a similarly situated individual based on F's claims experience.
>
> Example 2. (i) Facts. Same facts as Example 1, except that the issuer quotes the employer a higher premium rate for F, because of F's claims experience, than for a similarly situated individual.
>
> (ii) Conclusion. In this Example 2, the issuer violates this paragraph (c)(2). Moreover, even if the plan purchased the policy based on the quote but did not require a higher participant contribution for F than for a similarly situated individual, the issuer would still violate this paragraph (c)(2) (but in such a case the plan would not violate this paragraph (c)(2)).

71 Fed. Reg. 75038, 75041 (Dec. 13, 2006). The examples make clear that CONSOL may use "claims experience" to make decisions *regarding the price* of the benefits for the plan as a whole. However, CONSOL could not make discriminatory decisions *regarding eligibility for benefits* (*i.e.*, the right to receive transition benefits) within a group of otherwise similarly-situated individuals based on claims experience.

The undisputed evidence demonstrates CONSOL violated the discrimination provisions of ERISA based on claims experience. The retiree participants in the Retiree Welfare Plan had

always enjoyed all benefits and obligations in common under that plan. Yet in 2015, CONSOL created a new, richer benefit under that plan (the extended Retiree Transition Cash Benefit), offered that benefit to the approximately fifty individual Retiree Welfare Plan participants with the least claims experience on that Plan, and thereafter terminated that plan without offering that same benefit to the participants who had the greater claims experience under the plan. The costlier, older members of the group were treated less favorably than the otherwise similarly-situated Retiree Welfare Plan participants who had only garnered claims experience beginning on or after September 30, 2014. [ECF Doc. # 226, Pls.' Renewed Mot. to Cert. Class, Ex. 4 (Bjelland Rpt. at 21)] [2]

## C. Plaintiffs Established CONSOL Discriminated Against the Putative Class Based on Claims Experience.

"[The ERISA] legislative history suggests that Congress was concerned with the disparate treatment of individuals." *Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 379 (S.D.N.Y. 2009) (quoting H.R. Conf. Rep. No. 104-736, at 187 (1996), 1996 U.S.C.C.A.N. 1865, 2000)). Proof of specific intent to discriminate is not an element of Plaintiffs' discrimination claim in Count III because CONSOL's actions in failing to offer transition benefits to the Plaintiffs disparately affected the putative class with reference to their claims experience, comprising disparate treatment and disparate impact.

### 1. Disparate impact.

---

[2] Defendants argue that Mr. Bjelland's opinions should be disregarded in part because he testified that he agreed with the Court's previous decision to deny class certification. (Defs.' Resp. at 1-2.) Mr. Bjelland simply acknowledged that he was not offered to provide any legal opinion, and that the Court is the ultimate decision maker with regard to the legal claims asserted in this case. Moreover, Plaintiffs are asserting a theory that was not addressed by the Court in its previous opinion---i.e. discrimination based on claims experience. To be clear, Plaintiffs do not offer Mr. Bjelland's opinions to reverse the Court's previous findings.

Disparate impact exists when a facially neutral employer policy imposes a statistically significant burden on a protected class, such as the thousands of putative class members whose claims experience exceeded 15 months when only fifty with the least claims experience received more favorable treatment under the policy that Defendants used for computing benefits. *See*, *e.g.*, *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 69, 79 (3d Cir. 2017).[3]  To establish a prima facie case for disparate impact, the Plaintiffs must (1) identify a specific, facially neutral policy, and (2) proffer statistical evidence that the policy caused a significant disparity based on a protected factor. *Id*. at 69.  If the Plaintiffs do so, the Defendants may show that the challenged practice was based on reasonable factors other than the protected status. *Id*.

Here, Defendants established a uniform policy to provide predetermined, graduated transition benefits to Retiree Plan members based on their years of service. [ECF Doc. # 226, Pls.' Renewed Mot. to Cert. Class, Ex. 3, 6] The experts Bjelland and Selby provided statistical review to confirm two independently sufficient indicators establishing that claims experience distinguished the putative class from the approximately fifty plan members who received the favorable transition benefits.  First, the putative class members had all simply been on the plan longer than the fifty who received the transition benefits, and due to their longer tenure, had accrued greater claims experience. [ECF Doc. # 226-4 Bjelland Rpt. at 8, 22] Second, the experts demonstrated that the rate of filing claims escalates the longer that retirees are on a healthcare plan. (Ex. 1, Dep. of Selby at 43-44) ("I'm just saying that they had to know that these older people were creating an accelerated cost. It's clear by looking at the cost per subscriber that they had. It's consistently throughout the years. So it seems to me that they would have to know, given their

---

[3] The analysis of discrimination under ERISA generally comports with that under the ADEA, as clarified by the ERISA regulations set forth herein regarding specific prohibitions on disparate treatment in reference to claims experience.

claims data, that they [pre-2014 retirees] were causing more and more costs. So, I mean, there's not a paper that says that we discriminated against them. It's just -- the facts are they excluded them when they clearly would have known, should have known that they had the accelerate[d] cost functions.")

CONSOL knowingly issued a discriminatory rule based on claims experience in denying the putative class transition benefits. There was one factor alone that distinguished the approximately fifty miners who retired on or after September 30, 2014 from the remainder of the participants in the Retiree Welfare Plan: their claims experience was uniformly less. This rule comprised a policy – whether regarded as neutral or knowingly targeted to discriminate – rendering thousands of putative class members with lengthier claims experience ineligible to remain on the plan for the purpose of receiving transition benefits in 2016, while allowing the members with only 15 months of claims experience to remain on the plan through the end of 2015 and to receive those benefits.

**2.  Disparate treatment.**

Individuals seeking remedies for adverse action regarding benefits under ERISA must provide circumstantial or indirect evidence of discriminatory intent under the three-stage *McDonnell Douglas* burden-shifting framework, as modified by *Reeves v. Sanderson Plumbing Products, Inc.* and by other courts over time. To prevail under the McDonnell Douglas framework, plaintiffs must first establish a prima facie case by showing: (i) protected status, (ii) "that [defendant] took adverse action against [them]," and (iii) "that a causal relationship existed between the protected activity and the adverse employment activity." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir 2004); *see also Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). If a plaintiff can show that she suffered adverse action under suspicious

9

circumstances and that the defendant's state reasons for the action are false the factfinder may infer that the employer's undisclosed retaliatory animus was the actual cause of the adverse action. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); *Foster*, 787 F.3d at 250.

Notwithstanding the fact that direct proof of specific intent is not required, Plaintiffs did present ample indirect evidence that CONSOL intended to discriminate against the putative class based on claims experience. The evidence tends to show CONSOL knew specifically that it was denying the Retiree Transition Benefits to each individual retiree who had more than one year of claims experience on the Retiree Welfare Plan. In order to produce aggregated cost tables, compute benefit levels, and fulfill its duties as administrator of the Retiree Welfare Plan, CONSOL necessarily reviewed individualized claims data and understood that the miners who retired on or after September 30, 2014 had the least claims experience of all retirees in that Plan. (Ex. 1, Dep. of Selby at 43-44) Accordingly, CONSOL had knowledge that they were disparately treating the more claims-experienced retirees when they offered transition benefits to the roughly fifty individual retirees with the least claims experience.

Additionally, CONSOL was subject to a heightened duty of loyalty to the retiree plan participants in its capacity as a fiduciary. *See In re Unisys Corp. Retiree Medical Benefits ERISA Litig.,* 579 F.3d 220, 236–37 (3d Cir.2009) (fiduciary duty of loyalty governs an entity's actions as plan sponsor, including as to actions the entity carried out in its capacity as plan administrator) ("the specific equitable relief provision of ERISA ... trumps the application of the general principle that ERISA does not regulate settlor activity."). Thus, it is not credible that CONSOL would have

denied the retirees an extremely valuable transition benefit for reasons of mere inconvenience as Kurt Salvatori implied.Defendants' so-called legitimate nondiscriminatory reasons are all without merit. Kurt Salvatori testified that the transition benefit was not offered to the retirees because (1) "calculation was too complicated;" (2) the retirees had access to Medicare; and (3) CONSOL had represented to the approximately fifty individuals that they would be received retiree healthcare for up to five more years after they retired. [ECF Doc. # 232-3] (Salvatori Dep. at 116:11-117:5.) Each of these pretextual reasons are discussed in turn. First, there is no evidence that the calculation to be afforded the putative class would be too complicated. The very same formula to afford the roughly fifty retirees with the least claims experience could easily be applied directly to the putative class by providing the benefits in the very same steps based on years of service. CONSOL maintained all the same data on date-of-birth and years of service for all retiree plan participants. [ECF Doc. # 226, Pls.' Renewed Mot. to Cert. Class, Ex. 2]

Second, it is simply not true that all the putative class members had access to Medicare because they retired under the early retirement program upon reaching age fifty-five. Finally, the putative class bore witness to similar gratuitous representations from CONSOL in seeking retirement. There is no evidence to distinguish the putative class from the approximately fifty individuals that received the transition benefits in terms of representations made by CONSOL---that is, no evidence indicates that the putative retirees relied any less or any more on CONSOL's gratuitous representation of retirement healthcare than did the roughly fifty individuals who retired on or about September 30, 2014. This indicates that this purported non-discriminatory reason was merely pretext for a decision to discriminate based on claims experience.

Contrary to Defendants assertions, Plaintiffs have provided evidence that CONSOL discriminated against the putative class in violation of 29 U.S.C. § 1182. Because Plaintiffs have

11

satisfied all the elements for class certification under Rule 23 of the *Federal Rules of Civil Procedure*, Plaintiff motion to certify class on Count III should be granted.

### D. The Proposed Class Satisfies the Prerequisites of Rule 23.

As set forth below, the newly-developed evidence demonstrates Plaintiffs satisfy the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b) for the new class definition. Accordingly, this Court should grant Plaintiffs' renewed Motion to Certify Class.

#### 1. Numerosity: the class satisfies Rule 23(a)(1)'s numerosity requirement.

The Class Members are so numerous that joinder of all Class Members is impracticable. The sheer number of putative class members – at least 2,937 – alone makes joinder impracticable. There should thus be no question that numerosity is met in this case.

#### 2. Commonality: the class satisfies Rule 23(a)(2)'s commonality requirement because the class members share common facts and legal issues.

The class shares common issues. Indeed, the issues – both factual and legal – are identical as between all putative class members. CONSOL provided the transition benefit to the roughly fifty retirees who had the least claims experience in the Retiree Plan who had enrolled within the calendar year prior to the termination of plan coverage for the non-union participants in the Retiree Welfare Plan. [ECF Doc. # 226, Pls.' Renewed Mot. to Cert. Class, Ex. 2] Accordingly, CONSOL's discrimination against the putative class members is common throughout the class insofar as CONSOL denied the same Retiree Transition Benefit package to each of the putative class members.

The Defendants achieved a discriminatory outcome by denying a uniform set of benefits using a uniform line-drawing exercise that denied benefit eligibility based on a single common factor: claims experience on the Retiree Welfare Plan before September 30, 2014. Both the legal and equitable relief available are common based on those facts. Commonality under Rule 23(a)

may generally be found in ERISA cases seeking reformation of a plan benefit because the reasonable expectations of the plan participants are at issue, which presents "an objective standard susceptible to proof through common questions of fact." *Amara v. CIGNA Corp.*, 925 F. Supp. 2d 242, 262 (D. Conn. 2012). Accordingly, here, commonality under Rule 23(a) is present because The common factual and legal questions will yield absolutely congruent and uniform damages consisting of the sums provided in the Retiree Transition Benefits.

This proposed class action involves the following common questions of fact and law:

1. Whether the class members were participants in the applicable plan or plans;

2. Whether the Defendants established a "rule of eligibility" when they limited eligibility for the Retiree Transition Benefit to members of the putative class;

3. Whether Defendants disparately impacted or treated members of the putative class in violation of 29 U.S.C. § 1182;

4. What remedies are available due to the Defendants' violation of 29 U.S.C. § 1182?

The class claims arise out of a common transaction by the Defendants and a common legal theory: CONSOL's action of depriving Retiree Transition Benefits to the putative class violated 29 U.S.C. § 1182. Because Plaintiffs have demonstrated that the class shares common issues of law and fact, they have met the commonality requirement.

**3. Typicality: the class satisfies Rule 23(a)(3)'s typicality requirement because the claims of the named Plaintiffs are identical to those of the class members.**

The typicality requirement requires "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected[.]" *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 161 (S.D.W. Va. 1996) (quoting *General Tele. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). All of the named Plaintiffs' claims for discrimination undisputedly are identical to the claims of the putative class, and any relief that the

13

named Plaintiffs receive would inure equally to the class as a whole. *See Rhone-Poulenc, Inc.*, 173 F.R.D. at 161 ("[Typicality] factor and the commonality factor often merge.") (citing 1 Herbert B. Newberg, Newberg on Class Actions § 3.13 (3d ed.1992)). The claims and defenses of the named plaintiffs are typical of the claims or defenses of the putative class as a whole because putative class members are identically affected by the Defendants' alleged termination of the non-union retiree benefits, and disparate treatment of the retirees. Here, Defendants' conduct of denying the Retiree Transition Benefit to roughly 2,937 retirees commonly affected the putative class and all of the named plaintiffs, except Gilbert and Prater. [ECF Doc. # 226-7, Pls.' Renewed Mot. to Cert. Class (Dep. of K. Salvatori at 35-37)] The named Plaintiffs seek relief individually that is typical for the putative class: for CONSOL to pay them the same Retiree Transition Benefits that CONSOL paid to the roughly fifty Retiree Plan Participants who retired on or after September 30, 2014. Because the named plaintiffs claims are typical of those of putative class members, the requirement of Rule 23(a)(3) is satisfied.

**4. Fair and adequate representation: the class satisfies Rule 23(a)(4)'s adequacy requirement because the representatives have no conflicts with the class members and will vigorously prosecute their interests.**

Defendant argues that Plaintiffs Prater and Gilbert now have a conflict with the putative class. However, Prater and Gilbert are not serving as class representatives or class members. There is no suggestion of a conflict among the remaining class representatives.

**5. Rule 23 is the most appropriate method for administering the retirees' claims because the proposed class satisfies the requirements of Rule 23(b)(1), (2), and (3).**

As set forth below, the Plaintiffs have offered sufficient evidence to establish their ability to go forward under Rule 23(b) on Count III.

**a. Certification is proper under Rule 23(b)(1).**

14

Plaintiffs have established in this case that Defendants have acted uniformly with respect to the discriminatory denial of Retiree Transition Benefits for the putative class based on claims experience. Given all the claims arise out of this identical factual pattern as to the entire putative class, individual actions would necessarily pose a significant risk of inconsistent and varying adjudications. *See* Fed. R. Civ. P. 23(b)(a). Prosecuting these claims through separate actions regarding various geographic regions or job classifications would create a risk of various standards of conduct as to those aforementioned actions by the Defendants at the same mine sites, and could frustrate the abilities of non-party Plaintiffs to later pursue their own claims on the same facts affecting those same sites. *See* Fed. R. Civ. P. 23(b)(1)(b). Accordingly, Plaintiffs have established that this case is appropriately certified pursuant to Rule 23(b)(1).

### b. Certification is proper under Rule 23(b)(2) because Defendants' conduct affected the putative class in a generally-applicable fashion.

Certification under Rule 23(b)(2) is proper when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Defendants uniformly withheld Retiree Transition Benefits to all but those participants who retired on or after Sept. 30, 2014 in exactly the same fashion across all non-union mine sites. [ECF Doc. # 226-7, Pls.' Renewed Mot. to Cert. Class (Dep. of K. Salvatori at 35-37 (addressing that substantially all non-union retirees lost their retiree health benefits in 2014-2015)] Defendants acted on grounds that apply generally to the class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole under Rule 23(b)(2).

### c. Certification is proper under Rule 23(b)(3) because here common questions of law and fact predominate.

15

As noted above, the allegations regarding the revised class arise from questions of law or fact that are common to all class members and that predominate over any factual or legal issues affecting only individual putative class members. No individual consideration of class members' facts or the application of law to those facts would be necessary. Because common issues of fact and law would predominate – indeed there would be no need for individual factual determinations – the renewed class definition is appropriately certifiable pursuant to Rule 23(b)(3).

## IV. CONCLUSION

For the reasons set forth above, and any others appearing to the Court, the Plaintiffs respectfully request the following relief:

1) Conditionally certify a class with the following class definition:

    All participants or surviving beneficiaries covered by the CONSOL Energy Inc. Retiree Health and Welfare Plan whose benefits were terminated in 2015 and to whom CONSOL did not offer the transition benefit provided to those participants that joined the Plan on or after September 30, 2014.

2) Conditionally appoint Bren Pomponio and Sam Petsonk to serve as class counsel, and Benny Fitzwater, Clarence Bright, Emmett Casey, Jr., Bob Long, and Allan Jack to serve as class representatives.

3) Permit the Parties 60 days to conduct further discovery on class issues and damages.

4) Direct conditional class counsel to propose to this Court an appropriate notice to the class certified.

5) Any further relief deemed proper by the Court.


/s/ Samuel B. Petsonk
Samuel B. Petsonk (WVSB # 12418)
Petsonk PLLC

PO Box 1045
Beckley, WV 25802
(304) 900-3171 (phone)
(304) 983-4633 (fax)
Email: sam@petsonk.com

Bren J. Pomponio (WVSB # 7774)
Aubrey Sparks (WVSB # 13469)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, West Virginia 25301
(304) 344-3144
Fax: (304) 344-3145
Email: bren@msjlaw.org
aubrey@msjlaw.org