UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

BENNY FITZWATER, CLARENCE
BRIGHT, TERRY PRATER,
EMMET CASEY, JR., CONNIE Z.
GILBERT, ALLAN H. JACK, SR.,
and ROBERT H. LONG, on behalf of
themselves and others similarly
situated,

   Plaintiffs,

v.          Civil Action No. 2:16-cv-09849

CONSOL ENERGY, INC.,    Consolidated with:
CONSOLIDATION COAL CO.,   Civil Action No. 1:17-cv-03861
FOLA COAL CO., LLC,
CONSOL OF KENTUCKY, INC.,
CONSOL PENNSYLVANIA COAL CO.,
LLC, and KURT SALVATORI,

   Defendants.

MEMORANDUM OPINION AND ORDER

   Pending is plaintiffs' renewed motion to certify
class, filed May 13, 2020.

I. Background

   Earlier, on August 17, 2018, all seven named
plaintiffs jointly filed a supplemental motion for class
certification, which was denied by the court on October 15,

2019.[1]  See Fitzwater v. CONSOL Energy, Inc., No. 1:17-CV-03861, 2019 WL 5191245 (S.D.W. Va. Oct. 15, 2019).  The court's October 2019 decision laid out the background of this case, and the renewed motion does not require a complete rehashing of the facts.  Rather, plaintiffs' renewed motion relates only to plaintiffs' Count III: Discrimination against individual plan participants based on health status-related factors under 29 U.S.C. § 1182.

Of relevance here, on September 30, 2014 CONSOL Energy, Inc. and its subsidiaries (collectively, "CONSOL") announced that it was terminating retiree health and welfare benefits for all active employees on October 1, 2014.  See July 27, 2017 Declaration of Deborah Lackovic ¶ 13, ECF No. 67-5; ECF No. 155-14 (CONSOL PowerPoint presentation dated October 1, 2014 titled, "Benefit Changes").[2]  Under the announcement, retirement-eligible employees could continue to receive health and welfare benefits under the benefit plan for retired employees (the

---

[1] In addition, on December 22, 2017, Civil Action No. 2:16-cv-09849 was consolidated with Casey v. CONSOL Energy, Inc., No. 1:17-cv-03861 (S.D.W. Va. filed Aug. 23, 2017).  Prior to consolidation, plaintiffs in the 2016 case, Benny Fitzwater, Clarence Bright and Terry Prater, filed a motion to certify class on July 13, 2017.  See ECF No. 63.  Following consolidation, that motion was denied as moot by the court's February 6, 2018 order.  See ECF No. 100.

[2] Plaintiffs make no dispute about the timing of the notice by CONSOL.

"Retiree Benefits Plan") if they retired as of September 30, 2014, although the Retiree Benefits Plan would terminate entirely on January 1, 2020.  Alternatively, active employees could continue working and receive a one-time, lump sum transition payment, based on their years of service, to support their healthcare coverage upon retirement.  Unlike active employees at the time, individuals who retired prior to the September 2014 announcement did not receive the option to receive a one-time transition payment as compensation for the termination of their retiree health and welfare benefits.  In any event, CONSOL informed retired employees a year later by letter that their retiree benefits under the Retiree Benefits Plan would terminate instead on December 31, 2015.  See Fitzwater, 2019 WL 5191245, at *3–4.

The amended complaint filed March 1, 2018 alleged that "[i]ndividuals who had already retired as of September 30, 2014 necessarily had a lengthier history of filing claims under the applicable Plan and receiving healthcare under that Plan (i.e., they had a lengthier claims experience), and also tended to be less healthy due to their advanced age relative to the active workers."  ECF No. 103 ¶ 130.  Under 29 U.S.C. § 1182, defendants may not discriminate based on prohibited "health status-related factors," including health status, medical

condition (including both physical and mental illnesses), claims experience, receipt of health care, medical history, or disability.  29 U.S.C. § 1182(a)-(b).  By only offering the one-time transition payment to active employees and not retirees, defendants allegedly established and enforced rules for eligibility for the cash transition payment "based on the health status-related factors of health status, medical condition, claims experience, receipt of healthcare, medical history, and/or disability."  <u>See</u> ECF No. 103, ¶ 131; ECF No. 36 ¶¶ 121-25.

Based on these allegations, plaintiffs' 2018 supplemental motion proposed the following subclass definition applicable to Count III:

> <u>Class B</u>: All individual plan participants, and their dependents, who had enrolled in a retiree welfare benefits plan administered by Consol prior to Consol terminating their plan participation in the years of 2014 and 2015.

ECF No. 162 at 4.  The October 2019 decision concluded that those same allegations did not support class certification of Count III, reasoning that "[t]he mere fact that retirees and active employees were treated differently does not support the assertion that they were discriminated against based on their health status under §1182."  <u>Fitzwater</u>, 2019 WL 5191245, at *17.

The renewed motion does not dispute this finding, but focuses instead on the approximately 50 then-active workers who had reached age 55 by September 30, 2014 and declined the cash transition payment, opting instead to retire and enroll in the Retiree Welfare Plan on or before September 30, 2014.  See ECF No. 226 at 2-3.  For these approximately 50 new retirees (plus nine surviving spouses), such as named plaintiffs Terry Prater and Clarence Gilbert, "CONSOL provided a pro-rated portion of the previously rejected transition payment to reflect the receipt of an additional year of benefits under the Retiree Benefits Plan."  Fitzwater, 2019 WL 5191245, at *4; ECF No. 227 at 15 n.1.  This pro-rated benefit was paid out from December 2015 through January 2016.  See ECF No. 238 at 2.

The renewed motion seeks to certify a narrower class purportedly not yet addressed by the court, comprised only of those retirees (i.e., Retiree Welfare Plan participants) for whom plaintiffs contend that CONSOL denied the new pro-rated cash transition benefit based on "claims experience."  Invoking the court's discretionary authority under Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure, plaintiffs propose the following new class definition for Count III, comprised of approximately 2,937 members:

> **All individuals who were participants or surviving beneficiaries covered by the CONSOL Energy Inc. Retiree Health and Welfare Plan, whose benefits were terminated in 2015, and to whom CONSOL did not offer the same transition benefit provided to those participants who joined the Plan on or after September 30, 2014.**

ECF No. 226 at 6; ECF No. 227 at 12, 16.

In response, defendants argue that plaintiffs' renewed motion should be denied as procedurally deficient in that it was untimely filed and raises nothing "new" that plaintiffs could not have briefed previously. <u>See</u> ECF No. 233. Moreover, they assert that the renewed motion fails even if the court analyzes it under Rule 23 factors for class certification. <u>Id.</u>

## II.  Legal Standard

Rule 23(c)(1)(A) instructs that district courts should determine whether to certify a class "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Subsection (c)(1)(C) further provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1); <u>id.</u>, Advisory Committee Notes ("A determination once made can be altered or amended before the decision on the merits if, upon fuller development of the facts, the original determination appears unsound.").

Although plaintiffs do not point the court to authority from the Fourth Circuit, other courts have interpreted Rule 23(c)(1)(C) to mean that "[d]istrict courts have ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial." In re Initial Pub. Offering Sec. Litig., 483 F.3d 70, 73 (2d Cir. 2007).  For example, courts have "permit[ted] renewed certification motions that set out a narrower class definition or that rely upon different evidence or legal theories." See Hartman v. United Bank Card, Inc., 291 F.R.D. 591, 597 (W.D. Wash. 2013); Gutierrez v. Johnson & Johnson, 269 F.R.D. 430, 434 (D.N.J. 2010) ("A court may revisit a prior denial after developments in the factual background, a modified proposed class definition, new class representatives, or any other changes which may cure defects earlier found by the court.").

Still, courts generally require some basis to justify further argument as to class certification, such as new evidence or "materially changed or clarified circumstances." See Washington v. Vogel, 158 F.R.D. 689, 693 (M.D. Fla. 1994) (quoting 2 H. Newberg and A. Conte, Newberg on Class Actions (3d ed. 1992) § 7.47 at 7-146)); Terrill v. Electrolux Home Prod., Inc., 274 F.R.D. 698, 700 (S.D. Ga. 2011); Hartman, 291 F.R.D. at 597.  "Plaintiffs must show some justification for filing a

second motion, and not simply a desire to have a second or third run at the same issue." Hartman, 291 F.R.D at 597. "Rule 23(c)(1) provides Plaintiffs with a limited opportunity to adduce additional facts: It is not a Trojan Horse by which Plaintiffs may endlessly reargue the legal premises of their motion." Gardner v. First Am. Title Ins. Co., 218 F.R.D. 216, 218 (D. Minn. 2003) (emphasis in original) (granting motion to strike renewed motion for class certification "insofar as it pertains to matters other than facts uncovered through discovery conducted since" the court previously denied class certification).

Even in the case of newly discovered evidence, courts consider whether granting the renewed motion "would postpone resolution of this case." See Vogel, 158 F.R.D. at 692; Mogel v. UNUM Life Ins. Co. of Am., 677 F. Supp. 2d 362, 366 (D. Mass. 2009); Cabrera v. Gov't Employees Ins. Co., No. 12-61390-CIV, 2015 WL 464237, at *5 (S.D. Fla. Jan. 16, 2015) (denying renewed certification motion as untimely because the motions deadline "has long since passed and granting Plaintiff's renewed motion would postpone resolution of this already drawn-out case").

For that matter, Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); see also L. R. Civ.

P. 16.1(f).  When a plaintiff seeks to file an untimely motion, factors to consider include the "danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith."  <u>Tawwaab v. Virginia Linen Serv., Inc.</u>, 729 F. Supp. 2d 757, 768–69 (D. Md. 2010) (citations omitted).  "Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party."  <u>Montgomery v. Anne Arundel Cty., Maryland</u>, 182 F. App'x 156, 162 (4th Cir. 2006) (citations omitted).

Finally, courts have found that undue delay or undue prejudice to defendants provide grounds to deny renewed or untimely certification motions that failed to meet court-imposed deadlines.  <u>See</u> <u>O'Leary v. New Hampshire Boring, Inc.</u>, 323 F.R.D. 122, 128 (D. Mass. 2018) (finding that granting plaintiffs' attempts to seek class certification past the scheduling order deadline would unduly prejudice defendants where "parties agreed at a prior hearing that the plaintiffs had not raised the issue of class certification" and plaintiffs "offered no reason for failing to seek certification prior to the deadline even though they had the opportunity to do so"); <u>Mogel</u>, 677 F. Supp. 2d at 365 (denying motion for leave to file

renewed motion for class certification because there were no
facts alleged, besides the denial of class certification, "that
were not known when plaintiffs initially filed for class
certification"); <u>Vogel</u>, 158 F.R.D. at 692 (finding plaintiffs
failed to show "good cause for their earlier failure to seek
certification").

### III. Discussion

The court's scheduling order entered on July 17, 2018
set an August 17, 2018 deadline for motions for class
certification.  <u>See</u> ECF No. 149.  Nearly two years have passed
since and, by the time of the filing of the renewed motion,
nearly seven months had passed after the court denied
plaintiffs' supplemental motion for class certification.  At no
point has the court granted plaintiffs leave to file a renewed
class certification motion or set a new deadline for such
motions.

In their reply, plaintiffs attempt to justify the
timeliness of the renewed motion by noting that Rule 23(c)(1)(C)
permits the court to alter and amend previous class
certification rulings "before final judgment," and no final
judgment has been entered.  ECF No. 238 at 4 (quoting Fed. R.
Civ. P. 23(c)(1)).  Plaintiffs clarify that they do not seek

reconsideration of an already decided issue and emphasize how
the motion is not barred by the law of the case doctrine.[3]  ECF
No. 238 at 4-5.  Although the motion is styled as a "renewed
motion," plaintiffs, in their reply, point to the standards for
reconsideration of motions, namely: (1) an intervening change in
controlling law; (2) new evidence not previously available; or
(3) to correct a clear error of law or prevent manifest
injustice.  Id. at 4 (citing 3 Newberg on Class Actions § 7:35
(5th ed.); see also Zinkand v. Brown, 478 F.3d 634, 637 (4th
Cir. 2007) (citations omitted); Slavinski v. Columbia Ass'n,
Inc., No. CIV. CCB-08-890, 2011 WL 2119231, at *1 (D. Md. May
27, 2011) (applying standard to plaintiff's motion for
reconsideration of order denying conditional class
certification).  The reply asserts that the renewed motion was
filed "based on new evidence and to remedy an error of law,"
though plaintiffs' briefing does not identify any "clear error
of law."  See ECF No. 238 at 5.  Rather, plaintiffs' renewed

---

[3] "The law-of-the-case doctrine recognizes that 'when a court
decides upon a rule of law, that decision should continue to
govern the same issues in subsequent stages in the same case.'"
Graves v. Lioi, 930 F.3d 307, 318 (4th Cir. 2019) (quoting
Arizona v. California, 460 U.S. 605, 618 (1983)).

motion relies solely on the second factor: the availability of new evidence.

Insofar as plaintiffs, for the first time, apply reconsideration standards in their reply, this court has previously cautioned plaintiffs that it need not heed arguments raised for the first time in reply briefs.  See Fitzwater, 2019 WL 5191245, at *6 (citing Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006)).[4]  Regardless, plaintiffs have not provided adequate reasons for the court to grant their certification request.

First, plaintiffs justify this renewed motion by asserting that "new evidence clarifies" that the extended transition benefits "were new and distinct benefits under the Retiree Welfare Plan, and that CONSOL denied these to the putative class based on their claims experience."  ECF No. 227 at 2.  These are at most "new" revelations — though not based on new evidence — inasmuch as plaintiffs declined to raise these arguments in their motion to certify class and in the

_____

[4] In a similar vein, the reply refers to the instant motion for the first time as "Plaintiffs' Renewed Motion to Certify Class or in the Alternative, Motion to Alter or Amend Order."  ECF No. 238 at 1 (emphasis added).  Insofar as plaintiffs seek to subtly recharacterize the motion in their reply, the court relies on the relief requested in the motion and memorandum in support thereof, which do not move to reconsider the court's previous order.

supplemental class certification motion.  Plaintiffs' first and supplemental certification motions each argued that CONSOL discriminated by not offering "transition assistance" or "transitional benefits" to those who had already elected to retire.  See ECF No. 64 at 9, 17-18; ECF No. 156 at 2, 21–22. The existence of the pro-rata transition payment was addressed in the October 2019 decision.  See Fitzwater, 2019 WL 5191245, at *4.  Even though plaintiffs declined to originally seek class certification on these specific grounds, the extended transition benefits were not a novel revelation made in recent discovery or "materially changed or clarified circumstances" to justify revisiting the court's prior ruling.  See Vogel, 158 F.R.D. at 693; Hartman, 291 F.R.D. at 597.

Plaintiffs asserts that the court's October 2019 decision "did not consider evidence of claims experience of the putative class, but rather their health status."  ECF No. 238 at 5.  Much of the suggested "new" evidence is simply a new analysis that comes from plaintiffs' own ERISA expert, Harley Bjelland.  See ECF No. 227 at 5-6; ECF No. 226-3 (Report of Harley Bjelland dated February 3, 2020).  As explained by Mr. Bjelland, "claims experience" refers to "the doctor bills, hospital bills, pharmaceutical expenses and surgeries that a specific group has actually incurred over a year or, even

13

better, a number of years."  ECF No. 226-3 at 8.  Mr. Bjelland testifies that "while an insurer may calculate the <u>cost</u> of a defined benefit health benefit based upon [an individual's] status as active versus retired, it is a different action to choose <u>eligibility for benefits</u> based upon how expensive a person will be to cover under a defined benefit welfare plan." <u>Id.</u> at 17 (emphasis added).  To be sure, an insurer may use "claims experience" to set the price for the insurance plan as a whole, but administrators may not discriminate regarding eligibility benefits within a group of otherwise similarly situated participants based on an individual's claims experience (or any other health status-related factors).  <u>See</u> 29 C.F.R. § 2590.702(c) (Example 1); Nondiscrimination and Wellness Programs in Health Coverage in the Group Market, 71 Fed. Reg. 75038, 75,041 (Dec. 13, 2006).  Yet, the court already took these considerations into account in its October 2019 decision. <u>See</u> <u>Fitzwater</u>, 2019 WL 5191245, at *16 n.14.

Plaintiffs also cite the July 13, 2018 deposition testimony of defendant Kurt Salvatori, CONSOL's Vice President of Human Resources from 2011-2016 and fiduciary of the plaintiffs' employee welfare benefit plans.  ECF No. 227 at 8, 10; Salvatori Dep., ECF No. 226-7.  Mr. Salvotari explained that providing the transition payment to retirees "was never a

consideration because the people that you're describing, the inactive, had received the benefit for a period of time.  And what was that worth; right?  It would have been an impossible calculation to be able to figure out."  Salvatori Dep. 186:10-187:10,  ECF No. 226-7.  Of course, plaintiffs' supplemental class certification motion was filed in August 17, 2018, which means they could have raised this testimony previously.

Plaintiffs' attempts to repackage their "claims experience" arguments are unavailing.  The court's prior ruling considered plaintiffs' "assumption that the retirees necessarily 'had a lengthier claims experience . . . and also tended to be less healthy due to their advanced age.'" Fitzwater, 2019 WL 5191245, at *17 (quoting ECF No. 103 ¶ 130).  Plaintiffs simply did not offer adequate evidence or argument to support certifying Count III based on claims experience or any other health status-related factor.  Plaintiffs' decision not to fully raise the issue in previous briefing marks a tactical decision the court need not alleviate.  See Vogel, 158 F.R.D. at 692 ("The fact that Plaintiffs' counsel's tactical decisions did not work out as planned does not excuse the Plaintiffs' failure to timely seek class certification[.]").

On the contrary, the court must weigh the effects of this undue delay and undue prejudice to defendants.  See Mogel,

677 F. Supp. 2d at 365; O'Leary, 323 F.R.D. at 128.  Between the court's October 2019 scheduling order and the filing of plaintiffs' renewed motion, this court granted four separate requests to modify the scheduling order to allow the parties further opportunity for discovery and the filing of dispositive motions.  See ECF Nos. 208, 211, 220, and 224.  Despite noticing the parties as early as January 2020 "that the court is disinclined to grant further extensions absent extraordinary circumstances and good cause," plaintiffs filed their renewed motion without first moving for leave or offering a justification for the delay.  See ECF No. 211.  Moreover, plaintiffs' renewed motion requests an additional 60 days to conduct discovery on the class certification issue, a request the court has since denied as it would unnecessarily prolong this case.  See ECF No. 229 at 2.  Plaintiffs nonetheless repeat the request for 60 days of additional discovery in their reply. See ECF No. 238 at 16.

Briefing of defendants' summary judgment was already completed by the time the renewed motion was fully briefed on June 22, 2020.  The July 17, 2020 pretrial conference fast approaches.  Granting the renewed motion and reopening discovery would again delay trial, currently set for August 4, 2020, well into the fall and perhaps further.

All told, plaintiffs have not offered new evidence, "materially changed or clarified circumstances," or any other ground on which to reopen the class certification issue and postpone resolution of this case even further.  Accordingly, the court finds no basis to grant plaintiffs' renewed motion.

## IV.  Conclusion

Based on the foregoing, it is ORDERED that plaintiffs' renewed motion for class certification be, and it hereby is, denied.

The Clerk is requested to forward copies of this order to all counsel of record and to any unrepresented parties.

ENTER: July 2, 2020

John T. Copenhaver, Jr.
Senior United States District Judge